Curtis Ray WHITE, Appellant,

v.

The STATE of Texas, Appellee.

No. 1225–85.

Court of Criminal Appeals of Texas, En Banc.

April 8, 1987.

---

738

Scott E. Segall, El Paso, for appellant.

Steve W. Simmons, Dist. Atty., and Robert Dinsmoor, Asst. Dist. Atty., El Paso, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

McCORMICK, Judge.

Appellant was convicted of burglary of a habitation and a jury assessed punishment at fifty years in prison. The conviction was affirmed by the El Paso Court of Appeals in an unpublished opinion. *White v. State*, No. 08–84–00348–CR (Tex.App.—El Paso, 1985). We granted appellant's petition to determine whether the appeals court erred in holding that a systematic search for stolen property was proper under the "plain view" doctrine and second, whether that court erred in holding that the error in introducing certain fingerprint evidence was harmless.

The record reflects that police responded to a disturbance call at an El Paso apartment complex and were advised by the manager of the complex that a fight was in progress in one of the units. The officers observed two men exiting the apartment in question, their voices raised and blood on their clothing. The door to the apartment was left open. Both men were stopped, asked for identification, and questioned about the disturbance. The manager walked into the open apartment, then called out and asked the officers to examine "damage" apparently resulting from the fight between the two men. Two officers

entered the apartment and observed property strewn about the floor, with the refrigerator and bed moved away from the walls, but neither officer testified that he saw any "damage."

During their inspection, one officer observed a J.C. Penney credit card on the top of a stove. The name on the card did not match either of the names given earlier by the two tenants. Although the card was identified by appellant as belonging to a "friend," he did not know whose name was on the card. The officer checked with the police department but received a negative report that the card was stolen. The officer returned the credit card to the stove where he had found it and then "looked around the apartment," noticing that there was a large amount of "female" jewelry strewn about one area of the floor and several stereos and other items of personal property also scattered about the apartment. The officer took the serial number off the back of one stereo without moving the piece of equipment and also wrote down the name and address of an individual which was written on a backpack found on the floor. The officer called the police station to check on the items but again received a negative response that the items were stolen. Finally, the officer left the apartment, walked upstairs to the manager's apartment, phoned the records and identification section of the police department and gave them the name found on the backpack to check for filed complaints. He was advised that the individual had indeed filed a burglary complaint. The officer requested that the incident report be read to him over the telephone and he copied down a list of the property stolen along with the complainant's telephone number. A last telephone call to the complainant confirmed that several items found in appellant's apartment had been stolen from her residence two days earlier. At this point, appellant and the other tenant were arrested and the contents of the apartment were seized and indexed.

In appellant's first ground for review, he argues that the Court of Appeals erred in holding that the systematic search and seizure of the various items found in his apartment was permissible under the "plain view" exception to the general warrant requirement.[1] The State responds that the Fourth Amendment prohibits an illegal search *and* seizure but not merely an illegal search *or* seizure, citing *Segura v. United States,* 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984). According to the State's theory, the police, seeing the backpack in plain view, did not seize the article until confirming that it had been stolen, "thus satisfying the probable cause requirement." The appeals court below agreed with the State, citing *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), for the proposition that "[t]he seizure of property in plain view is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity." Overruling appellant's first ground for review, the lower court noted that "there was no seizure of the goods until the officer had established through the complaining witness that her property was located in the Appellant's apartment."

In *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), the Supreme Court stated that under certain circumstances a warrantless seizure by police of an item that comes within "plain view" during their lawful search of a private area may be reasonable under the Fourth Amendment. The Court identified three circumstances which must be satisfied before the plain view doctrine applies: (1) officers must lawfully be on the premises; (2) the discovery of the incriminating evidence is "inadvertent," and (3) it is "immediately apparent" that the incriminating evidence is seizable as evidence of a crime. See *Coolidge v. New Hampshire,* supra; *Texas v. Brown,* supra; see also, *Williams v. State,* 668 S.W.2d 692 (Tex.Cr.App.1983) (consensual entry, gun seized in plain view); *Bolden v. State,* 634 S.W.2d 710 (Tex.Cr.App.1982) (emergency entry, gun and money in plain view); *Sutton v. State,* 519 S.W.2d 422 (Tex.Cr.App.1975) (invited

---

1. Appellant raises only Fourth Amendment considerations on appeal.

entry, property stolen in burglary observed).

In the instant case, we are constrained from upholding the search of appellant's apartment and seizure of property discovered therein since the record reveals that the actions of the police officers in discovering the evidence was not "inadvertent" nor was it "immediately apparent" that the property seized was evidence of any crime. In short, the officers here lacked probable cause to search for or to seize the property at issue.

Prior to the present term, the Supreme Court had not expressly ruled on the question of whether probable cause is required in order to invoke the "plain view" doctrine. Dicta in *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), suggested that the probable cause standard has to be met to justify a "plain view" determination, but the later opinion in *Texas v. Brown,* supra, explicitly noted the matter as unresolved. The Court has now resolved the issue, expressly holding that probable cause is required to invoke the plain view doctrine. See *Arizona v. Hicks,* —— U.S. ——, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), 40 Cr.L. 3320 [March 4, 1987]). The Court, through Justice Scalia, explained the rationale for their holding in the following fashion:

"... To say [that probable cause is not required] would be to cut the 'plain view' doctrine loose from its theoretical and practical moorings. The theory of that doctrine consists of extending to nonpublic places such as the home, where searches and seizures without a warrant are presumptively unreasonable, the police's longstanding authority to make warrantless seizures in public places of such objects as weapons and contraband ... And the practical justification for that extension is the desirability of sparing police, whose viewing of the object in the course of a lawful search is as legit-imate as it would have been in a public place, the inconvenience and the risk—to themselves or to preservation of the evidence—of going to obtain a warrant. See *Coolidge v. New Hampshire,* supra, at 468 [91 S.Ct. at 2039] (plurality). Dispensing with the need for a warrant is worlds apart from permitting a lesser standard of *cause* for the seizure than a warrant would require, i.e., the standard of probable cause. No reason is apparent why an object should routinely be seizable on lesser grounds, during an unrelated search and seizure, than would have been needed to obtain a warrant for that same object if it had been known to be on the premises." [2]

The Court went on to state that

"The same considerations preclude us from holding that, even though probable cause would have been necessary for a *seizure,* the *search* of objects in plain view that occurred here could be sustained on lesser grounds. A dwelling-place search, no less than a dwelling-place seizure, requires probable cause, and there is no reason in theory or practicality why application of the plain-view doctrine would supplant that requirement. Although the interest protected by the Fourth Amendment injunction against unreasonable searches is quite different from that protected by its injunction against unreasonable seizures, ... neither the one nor the other is of inferior worth or necessarily requires only lesser protection. We have not elsewhere drawn a categorical distinction between the two insofar as concerns the degree of justification needed to establish the reasonableness of police action, and we see no reason for a distinction in the particular circumstances before us here...." (Citations omitted). (Emphasis in original opinion).

The *Hicks* Court was concerned with a situation where the police were lawfully

---

2. The Court noted that its decision did not overrule prior cases in which a seizure was justified over less than probable cause, see e.g. *United States v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) (dictum), but that no such "operational necessities" were present in the case under consideration so as to excuse the probable cause requirement.

inside a private dwelling investigating the source of a gun shot that had sent a bullet through the floor of one apartment and injured a person in the apartment below. While in the upstairs apartment, police officers moved stereo equipment to reach the serial numbers, which were then recorded. It was subsequently determined that the equipment was stolen property. The state trial court granted defendant's motion to suppress the seized evidence. The Court of Appeals of Arizona affirmed holding that the search and seizure was not justified under the "plain view" doctrine of *Coolidge v. New Hampshire*, supra. The Arizona Supreme Court denied review and the state filed its petition with the U.S. Supreme Court. That Court affirmed the judgment of the Arizona Court of Appeals holding there was no probable cause to believe that the equipment, as *initially* viewed by the officers, was stolen. Only after the officers searched further, by moving the equipment so as to view, record and check the numbers, did probable cause arise so as to justify the subsequent seizure. The Court's decision was aided by the State's admission that police lacked probable cause to believe the equipment was stolen until after the serial numbers were recorded and checked.

The case at bar, although factually different, rests within the purview of *Hicks*. On appeal, appellant does not argue that the officers were improperly "on the premises;" his contentions go to the second and third prongs of the "plain view" test. But even if the initial entry was legal, the officer's subsequent conduct satisfies neither the inadvertent nor the probable cause prong of the modified *Coolidge* test. The record reflects that the officers apparently saw no physical damage to the apartment yet continued to "look around," their actions clearly exploratory in nature. An officer discovered the credit card, noticed it was imprinted with a name other than that given by either tenant and proceeded to investigate the possibility that the card was stolen. We fail to see that the mere presence of the card, even together with appellant's lack of knowledge of the owner's name, rose to the level of probable cause

that the card was stolen. Indeed, the officer's query by telephone as to the status of the card certainly demonstrates that the officer lacked probable cause at the time he initially discovered the card to believe the credit card to be the fruit of a crime.

The officer's further search after returning the credit card led him to "discover" and investigate the status of certain articles of jewelry, some stereo equipment and a backpack. We are told that the stereo equipment was situated in such a manner that the identifying number could be read and recorded without moving the equipment. The backpack was also turned over so that the complainant's name could be read without moving the bag. But the fact remains neither the identifying number on the stereo, the name on the bag nor the mere presence of the jewelry gave the officers probable cause to believe, when those articles were discovered, that one or all of them were stolen property. Only after further investigative steps were taken, albeit most thoroughly, did the officers have probable cause to seize the items as stolen goods.

■ It is well settled in this State that items in "plain view" may not be *seized* if the officer does not have reason to believe that they are evidence, or fruits of, or instrumentalities of a crime. See e.g. *Sullivan v. State*, 626 S.W.2d 58 (Tex.Cr.App. 1982); *Howard v. State*, 599 S.W.2d 597 (Tex.Cr.App.1980) (opinion on rehearing); *Thomas v. State*, 572 S.W.2d 507 (Tex.Cr. App.1978); *Turner v. State*, 550 S.W.2d 686 (Tex.Cr.App.1977); *Duncan v. State*, 549 S.W.2d 730 (Tex.Cr.App.1977). That standard is today expressly extended to *searches* conducted pursuant to the plain view doctrine. In the case at bar, the record is devoid of any evidence that it was "immediately apparent" to the inspecting officers that the property discovered was evidence of a crime. Thus, the officers lacked probable cause for further investigation. *Arizona v. Hicks*, supra.

It is also questionable whether the articles seized were "inadvertently" discovered. Giving the State the benefit of the doubt as to the initial article discovered,

the officer's continued inspection and cataloging of each item after finding the credit card had no "listed" status has all the elements of a systematic search for incriminating evidence. Evidence that an officer purposefully seeks out is not in "plain view." *Walter v. United States*, 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980).

 Consequently, the discovery of the items does not appear "inadvertent" nor was it "immediately apparent," using the probable cause standard, that the property was incriminating in itself or evidence of a crime[3] so as to justify further search or seizure of the property under "plain view" analysis. The Fourth Amendment is intended to deter unreasonable police conduct, such as systematic exploration from one object to the next, which may ultimately turn up incriminating evidence. See *Arizona v. Hicks*, supra; *Coolidge v. New Hampshire*, supra. Appellant's first ground for review is sustained.

Due to our disposition of appellant's first ground of review we do not need to decide the merits of appellant's last ground regarding admission of certain "known" fingerprint cards.[4] We are, however, constrained to point out that the proper test for harmless error is not whether the admittance of such evidence is "harmless beyond a reasonable doubt" as stated by the court below, but whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction. *Ranson v. State*, 707 S.W.2d 96 (Tex.Cr.App.1986); *Maynard v. State*, 685 S.W.2d 60 (Tex.Cr.App.1985); *Clark v. State*, 627 S.W.2d 693 (Tex.Cr.App.1981).

The decision of the appeals court is reversed and the cause remanded to the trial court for new trial.

ONION, P.J., and DAVIS, J., concur in the result.

3. We are not faced here with a situation where officers either could directly connect the property discovered within view with a crime or, because of characteristics of the property, have probable cause that the property was evidence of a criminal act. Where officers have probable cause upon initial discovery of the item to believe it is such evidence, *Hicks* would not appear to foreclose further police activity which results in directly connecting such evidence to a *particular* crime.

4. We do note, however, that the appeals court below properly decided, albeit without citing authority, that the State failed to link directly appellant with the "known" fingerprint card. See *McGowan v. State*, 664 S.W.2d 355 (Tex.Cr.App.1984). On retrial, the new rules of evidence delineate the proper manner of identification and authentication of a police department's jail cards. Tex.R.Cr.Evid., Article IX, R. 901 et seq. (West 1986).