**Edward Lee WILLIAMS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 489–86.

Court of Criminal Appeals of Texas, En Banc.

Jan. 27, 1988.

---

Brenda Rotramble, Decatur, for appellant.

Jack A. McGaughey, Dist. Atty., Montague, Robert Huttash, State's Atty., Austin, for the State.

OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

McCORMICK, Judge.

Appellant Edward Lee Williams was indicted by a Clay County grand jury for the offense of burglary of a habitation. Upon a plea of not guilty, a jury found the appellant guilty of the offense, and punishment, enhanced by a prior conviction, was assessed at 25 years' in Texas Department of Corrections.

Appellant appealed his conviction to the Fort Worth Court of Appeals. The court affirmed, with Chief Justice Fender dissenting without opinion. *Williams v. State*, 704 S.W.2d 595 (Tex.App.—Fort Worth 1986). Appellant petitioned this Court for review. We granted review to consider appellant's claim that the trial court erred in overruling a motion to suppress evidence seized as the result of a warrantless search of appellant's vehicle. We find appellant's contention to be meritorious and reverse the conviction.

The search and seizure issue presented by the appellant concerns the plain view doctrine. A brief recitation of the facts helps provide a clear understanding of the issue. Appellant came to the attention of a Wichita Falls police officer on October 5, 1984, when appellant pulled into Bobby Pitts' Lawnmower Repair Shop in Wichita Falls. At the time, appellant was driving his green and white pickup truck. The officer testified he was on the scene for the purpose of watching Pitts' repair shop for any signs of criminal activity.[1] The officer observed appellant for a few minutes and then called Lieutenant Vigil on the radio. Vigil had been looking for a green and white pickup that had been reported as a suspicious vehicle by a woman earlier that day. It is important to note that the truck was not suspected of being involved in a burglary. Nothing was reported missing by the woman who complained of the presence of the pickup.

When Lieutenant Vigil arrived, he approached appellant's vehicle and looked inside. Appellant, who was standing nearby, approached Vigil and spoke with him, identifying himself with a driver's license. Vigil testified that when he looked inside the vehicle he saw about an inch of the stock of a rifle sticking out from under a towel in the cab of the truck.[2] Vigil then lifted the towel and discovered a stack of guns. When questioned, appellant stated that he found the guns outside the home of a friend, whom he presumed to be the

1. There was testimony that the officers suspected Pitts to be involved in a fencing operation.

2. There is testimony from the other officer on the scene that he saw three or four rifle stocks and barrels protruding from under the towel.

We focus upon the testimony of the senior officer who, based on his observations and experience, actually made the decision to search and subsequently seize the evidence.

owner, and was holding the guns for the purpose of returning them. Vigil seized the guns, but did not place appellant under arrest. At the time of the seizure, no report had been made of any missing guns. In fact, the complaining witness, Mr. Jackey Dunn, was not yet aware of the burglary.

In a pretrial hearing, appellant moved to suppress the weapons seized by Lt. Vigil, claiming that the seizure was in violation of the Fourth Amendment to the Constitution of the United States and Article I, Section 9 of the Texas Constitution. The State responded that the search was proper under the plain view doctrine.[3] The trial court denied the motion, and the evidence was introduced at trial to appellant's detriment.

In *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), the United States Supreme Court identified three circumstances which must be satisfied before the plain view doctrine applies: (1) the officers must lawfully be on the premises; (2) the discovery of the incriminating evidence is "inadvertent", and (3) it is "immediately apparent" that the incriminating evidence is seizable as evidence of a crime. Id.; *See also, White v. State*, 729 S.W.2d 737, 739 (Tex.Cr.App. 1987); *Williams v. State*, 668 S.W.2d 692 (Tex.Cr. App.1983). We find the search and seizure in the instant case to be defective since the record reveals that it was not "immediately apparent"[4] to the police officers that the property seized was evidence of any crime, that is, the officers lacked probable cause to seize the weapons.[5]

It is well-settled that items in "plain view" may not be seized if the officer does not have reason to believe that they are evidence, or fruits of, or instrumentalities

of crime. See e.g., *White*, supra; *Sullivan v. State*, 626 S.W.2d 58 (Tex.Cr.App.1982); *Howard v. State*, 599 S.W.2d 597 (Tex.Cr. App.1980) (opinion on rehearing); *Thomas v. State*, 572 S.W.2d 507 (Tex.Cr.App.1978); *Turner v. State*, 550 S.W.2d 686 (Tex.Cr. App.1977). In the instant case, the record is completely devoid of any showing that it was "immediately apparent" to the inspecting officers that the property discovered was evidence of a crime.

Vigil testified that he had seen approximately one inch of the stock of one rifle covered by a towel. He discovered more rifles only when he removed the towel. Vigil stated that he came to investigate, as he was looking for a green and white truck in regards to an earlier report of a suspicious vehicle. However, nothing had been taken from the woman who filed the report. The record reflects the following exchange:

"Q. But she reported nothing taken?

"A. Nothing was taken.

"Q. No guns taken?

"A. No guns taken."

Vigil never articulated any facts showing his knowledge that the guns could possibly be evidence or contraband.

"Q. Now could you tell that they were contraband or if they were illegal within themselves?

"A. *I assumed they were illegal.* That is why I took them.

"Q. But you couldn't tell by looking at them?

"A. Not at that time.

"Q. It is not illegal to carry rifles and shotguns in pickup trucks is it?

"A. No." (Emphasis added).

---

**3.** In briefing the argument before this Court, the State also contends that the seizure can be justified as "preventing the consequences of theft" under Article 18.16, V.A.C.C.P. We find that contention to be patently unreasonable under the facts of this case. Such provision should not be used as an open invitation for fishing expeditions.

**4.** We also express some doubt as to whether the articles seized were "inadvertently" discovered. The first gun viewed may reasonably be classi-

fied as an "inadvertent" viewing, but the further inspection without probable cause is questionable.

**5.** In *Arizona v. Hicks*, —— U.S. ——, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), the Supreme Court held that probable cause is required to invoke the plain view doctrine, excepting situations in which there were "operational necessities." No such "operational necessities" were present in the case at bar.

This situation is factually analogous to *Arizona v. Hicks*, —— U.S. ——, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987). In that case, officers had been dispatched to the defendant's apartment where they discovered stereo equipment, which, due the value of the equipment, appeared out of place in the apartment. One of the officers picked up a piece of the equipment in order to locate a serial number. After the officer had taken the serial number, he called headquarters and learned that the equipment had been taken during an armed robbery. A majority of the Supreme Court held that the plain view doctrine could not justify the actions of the officers. The Supreme Court held that the picking up of the stereo equipment in order to locate a serial number constituted a seizure for purposes of the Fourth Amendment and probable cause to believe that the equipment was stolen was necessary in order to support either the search or seizure.

In light of *Arizona v. Hicks*, supra, it becomes apparent that the Court of Appeals misapplied the plain view doctrine. The court states: "We therefore focus our review upon whether the State proved that the officers had *probable cause to associate appellant's possession* of several guns in his pickup *with criminal activity.*" (Emphasis added). Framing a plain view issue according to the strength of the correlation between the *accused* and criminal activity misses the point of the constitutionally mandated inquiry. The Supreme Court has stated that the officers must have probable cause to believe the *evidence* is associated with criminal activity. The Court of Appeals erred by focusing upon probable cause in general, instead of the probable cause needed to invoke the plain view doctrine.[6]

As the officers in the case at bar did not have probable cause to believe that the guns were stolen at the time of the search and seizure, appellant's rights under the Fourth Amendment to the United States Constitution and Article I, Section 9, of the Texas Constitution were violated.

The judgments of the Court of Appeals and the trial court are reversed and the cause remanded to the trial court.

---

6. For example, the Court of Appeals lists several factors that lead them to the conclusion that the search was supported by probable cause. Among those factors is: "... (6) the officer thought it unusual for a person to have six or seven rifles or shotguns in a vehicle...." We would point out that the officer was not aware of the presence of "six or seven rifles or shotguns" until *after* the search.