**Charles Ellis JOSEPH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 1369–88, 1370–88.**

Court of Criminal Appeals of Texas, En Banc.

Feb. 27, 1991.

Rehearing Overruled April 24, 1991.

M. Scott Stehling, Kerrville, for appellant.

E. Bruce Curry, Dist. Atty., and Susan L. Patterson, Asst. Dist. Atty., Kerrville, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MILLER, Judge.

Appellant was convicted by a jury of two separate offenses of possession of a controlled substance, to-wit: possession of less than 28 grams of lysergic acid diethylamide (L.S.D.) and possession of less than 28 grams of cocaine. V.T.C.A. Health and Safety Code, Sec. 481.115(b). The offenses were tried in a single trial. The trial judge assessed punishment at eight years imprisonment for each offense, the sentences to run concurrently. The Court of Appeals affirmed appellant's conviction in a published opinion. *Joseph v. State*, 759 S.W.2d 770 (Tex.App.—San Antonio 1987). In his petition, appellant raised three grounds for review, but we granted only one ground which states: "The Court of Appeals opinion affirming the admission before a jury of incriminating statements in a letter seized by a police officer from within an envelope located while opening and reading all the appellant's mail during the execution of a warrant to search the appellant's residence for marijuana is a dangerous precedent in conflict with prior law." Tex. R.App.Pro. 200(c)(3). We will reverse and remand.

A warrant was issued authorizing the search of appellant's residence for "a usable quantity of marijuana." While executing the search on March 31, 1987, an officer discovered a letter addressed to appellant at his then current residential address. The envelope, postmarked April 22, 1986, was addressed to Charles E. Joseph, 1000 Paschal # 805, Kerrville, Texas. The envelope contained a greeting card with a short, handwritten letter.[1] The contents of the letter are as follows:

Dear Sir Charles,

Made it alright to Oklahoma, everything went fine. I already got myself a job, I don't have anything to get high with. Send me some until I can meet me some-body up here. I hope ... not any problem with you at this time. I sure would like to get high.

Hope things are alright with you and family, I already miss the games we had at the apartment, good luck Charles whatever you decide to do. I hope you have a girl, let me know what she has when the time comes.

Hoping to hear from you real soon, next time Sir Charles.

Always, Don

During the search, officers found and seized "a usable quantity of marijuana" in a package which also contained the substances L.S.D. and cocaine. In addition, various items of drug paraphernalia were discovered during the search.

Defense counsel filed a motion to suppress all evidence seized as a result of the search on the basis that the affidavit lacked the requisite probable cause for issuance of a warrant. The trial judge overruled the defendant's motion at a pre-trial hearing. Officer Donnie Bunch of the Kerrville Police Department testified at trial that he was the officer who searched and seized the letter. Before the letter was introduced at trial, defense counsel questioned Officer Bunch outside the jury's presence, and the following exchange took place:

Q. Did you open up every envelope in the master bedroom?

A. I can't verify for sure. I looked through several boxes of letters and photographs and—

Q. Did you read them?

A. Some of them, yes, sir.

Q. Were you looking for incriminating statements at that point?

A. Some of them, yes, sir.

Q. And is that what you were doing when you read this letter?

A. That's one of the reasons I kept the letter, yes, sir. Also I kept it because it showed that Charles Joseph also lived there at the residence.

---

1. The letter, as attached to the statement of facts, consists of a one-fold greeting card with the inscription "Missing You" superimposed on an indistinguishable artistically designed background.

Q. Were you able to determine before you read the letter that there was no marijuana?

A. No, sir, I mean I couldn't tell whether there was marijuana in there until I looked inside.

Q. Right, and when you looked inside you could see there was no mariuana [sic]. Is that correct?

A. Yes.

Q. And after that you went ahead and read the letter?

A. Yes, sir.

\* \* \* \* \* \*

Q. And when you pulled out the letter you were able to look in the envelope and determine that there was no marijuana in the envelope?

A. Yes, sir.

Q. And was it after you made that determination that you then read the letter that was inside?

A. Yes, sir, I read the letter.

Q. And when you unfolded the letter before you read it, it was obvious there was no mariuana [sic] in there. Is that correct?

A. Yes, sir.

\* \* \* \* \* \*

Q. And do you know who this Don is, this Don Davis is that may have written this letter?

A. No, sir, I don't know the person.

Q. Does it say anything about L.S.D. or cocaine per se?

A. Doesn't mention—

Q. Those items?

A. No, sir.

Defense counsel then objected to the introduction of the letter on the grounds that it was too remote in time, having been mailed approximately one year before the search date, and had no bearing on appellant's knowledge and possession of cocaine or L.S.D., and that the appellant had no control over what was written to him by other persons. Defense counsel's objection continued in part:

We object on the basis that it's [an] attempt to introduce material that could be prejudicial against this Defendant without being beneficial in the sense that it will provide this jury with any assistance in the duty that they have to determine whether or not this Defendant knowingly possessed cocaine or L.S.D. on or about March the 31st, 1987, that the items were seized without probable cause, that a search warrant for marijuana does not authorize you to go and read everybody's mail, that it was clear that there was no marijuana at the time the officer read the mail, that under the circumstances the items should be suppressed.

The trial court overruled the objection and admitted the letter into evidence. The trial proceeded to direct examination of the witness who then read the letter in its entirety before the jury. On cross-examination, Bunch stated that he had read other letters and this letter was the only one worth keeping.

■ The court of appeals upheld the trial court's ruling that the seizure of the letter was proper for the purpose of showing defendant's occupancy of the premises as bearing upon the issue of his possession of marijuana and other controlled substances found therein, thus establishing a nexus between the search for marijuana and evidence of criminal behavior. *Joseph,* 759 S.W.2d at 773. The court of appeals upheld the seizure of both the letter and the envelope for the purpose of establishing occupancy. The envelope is clearly admissible for the purpose of showing occupancy and control of the premises. *Herrera v. State,* 561 S.W.2d 175 (Tex.Cr.App.1978); *Oubre v. State,* 542 S.W.2d 875 (Tex.Cr. App.1976).[2]

■ Appellant contends that the court of appeals erred in upholding the trial court's admission of the contents of the letter. Specifically, appellant argues the search and seizure of this letter cannot be justified under the plain view doctrine of *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct.

**2.** Appellant withdrew his objection on this ground and acknowledges that the envelope is properly admissible for the purpose of showing occupancy and control of the premises.

2022, 29 L.Ed.2d 564 (1971).[3] Appellant also argues that the court of appeals' discussion regarding the fact that the warrant did not authorize a search for mere evidence is immaterial.[4]

In answer to this contention, we note that it is well settled that general exploratory searches are illegal. *Stanford v. Texas*, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965). A valid warrant based on probable cause is necessary to conduct a search unless one of the many exceptions to the warrant requirement is appropriate under the circumstances. In some instances "mere evidence" which is not specifically listed in the warrant may be discoverable. Mere evidence is evidence connected with a crime, but does not consist of fruits, instrumentalities, or contraband. *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). Officers may seize mere evidence when the objects discovered and seized are reasonably related to the offense under investigation and the discovery is made in the course of a good faith search conducted within the parameters of a valid search warrant. *Id.* at 307–310, 87 S.Ct. at 1650–1652. The scope of a search, during which "mere evidence" may be found, is restricted to the object of the search and the places in which there is probable cause to believe it may be found. *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

The Texas Code of Criminal Procedure defines those items which may be the object of an authorized search. Art. 18.02, V.A.C.C.P. In the instant case, the search warrant was issued for "a useable quantity of marijuana." The warrant does not indicate the specific ground for its issuance, but the State asserts in its brief that the warrant was issued pursuant to Art. 18.-02(7), V.A.C.C.P., to-wit: "drugs kept, prepared, or manufactured in violation of the laws of this state."

In the case *sub judice*, the letter seized was "mere evidence" because it contained incriminating statements potentially linking appellant with possession of illegal substances, and thus it was not fruits, instrumentalities, or contraband. *Warden*, 387 U.S. at 306, 87 S.Ct. at 1649–50. The warrant here does not include "written or printed material." The letter seized was clearly not described in the search warrant.

We must next determine, however, whether the letter was discoverable within the scope of the search as defined in *Ross*, 456 U.S. at 799, 102 S.Ct. at 2159–60. Because marijuana was the object of the search, we must determine whether the officer had probable cause to believe that the drug could be found within the letter. Although a "useable quantity of marijuana" could conceivably be found "just about anywhere," as Officer Bunch alluded in his testimony, it is implausible that the written contents of a letter could conceal such contraband. Further, Bunch testified that he knew that he would not find marijuana before he read the letter, and that he was looking for incriminating statements. The investigating officer testified that he read the letter *after* a determination that neither the envelope nor the card had marijuana secreted within its folds. We hold that the search and seizure of this letter exceeded the scope of the authorized search warrant.

Having determined that the search and seizure of this letter exceeded the scope of the warrant, we must next examine whether an exception to the warrant requirement is present in the instant case, thus justifying the seizure of the letter. The State contends that once the officers

---

**3.** The United States Supreme Court recently revised the standards for the plain view analysis in *Horton v. California*, —— U.S. ——, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), eliminating the inadvertent discovery prong of the previous analysis.

**4.** In the court of appeals, appellant argued that because the search warrant did not describe the letter, the seizure was the fruit of an illegal general exploratory search. The court of ap-

peals distinguished this case from one in which a warrant for mere evidence is issued under Art. 18.02(10), V.A.C.C.P. The court further noted that Art. 18.01(d), V.A.C.C.P., prohibits seizure of anything not specifically described in an Art. 18.02(10) warrant. *See Scoggan v. State*, 736 S.W.2d 239 (Tex.App.—Corpus Christi, pet. ref'd) (case distinguished under Art. 18.02(10) warrant).

had opened the letter its contents were in plain view, and therefore they had the authority to read the letter. Appellant counters that this action does not meet the plain view test, citing *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) [now modified by *Horton v. California,* — U.S. ——, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990) ].

■■■ For the plain view exception to the warrant requirement to attach, two requirements must be met: 1) the officer must be in a proper position to view the item or lawfully be on the premises; and 2) the fact that the officer has discovered evidence must be immediately apparent. *Horton,* — U.S. ——, 110 S.Ct. 2301. Assuming that the officers were legally on the premises pursuant to a valid search warrant, we will confine our discussion to the immediately apparent factor.

■■■ The plain view doctrine requires a showing of probable cause. *Arizona v. Hicks,* 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987); *White v. State,* 729 S.W.2d 737 (Tex.Cr.App.1987). The immediately apparent prong of the plain view analysis does not require actual knowledge of incriminating evidence. *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (reasonable person standard applied to officer's knowledge regarding drugs transported in balloons). In *Hicks,* the officers, in responding to a shooting, moved some stereo equipment in the appellant's apartment to view and record the serial numbers. The Supreme Court held that the mere recording of the numbers did not constitute a search, but rather a search occurred when they moved the equipment. *Hicks,* 480 U.S. at 325, 107 S.Ct. at 1152–53. Thus, the serial numbers were not immediately apparent to the officers because they had to move the equipment to view and record the numbers. Since the evidence seized was not related to the original entry to the premises, probable cause was required before it could properly be seized. The Supreme Court articulated the rule that the focus is whether the offi-

cer has probable cause to believe that the evidence discovered is associated with criminal activity.

In the case at bar, once the officer discovered no marijuana in the envelope, the presence of an ordinary greeting card poses no reasonable suspicion, much less probable cause, that it is associated with criminal activity to warrant the officers to open the card and read its contents. Possession of personal mail, such as a greeting card, is not in itself a suspicious circumstance.[5] The officer already knew there was no marijuana in the envelope or within the folds of the greeting card. Once the officer discovered no sign of criminal activity at that time, a further search was not allowed under the circumstances. The innocuous possession of such a greeting card has no connection to criminal activity. There is no evidence in the record to indicate that it was immediately apparent to the police officer that the letter/greeting card, without further inspection, was evidence of a crime. *White,* 729 S.W.2d at 741.

The instant case is analogous to this Court's decision in *White,* 729 S.W.2d 737. In *White,* the police responded to a disturbance call at an apartment complex. The manager asked that they enter a particular apartment to inspect for damage. Upon entry to the open apartment, police found no damage, but they did view a number of items suspected of being evidence of criminal activity. The officers saw a credit card bearing the name of someone other than the occupants of the apartment, some jewelry, several stereos, and a backpack with the name and address presumably of its owner. The officers ran a check on the credit card and found no indication that it was missing. The officers further checked the serial numbers of the stereo equipment and telephoned the individual whose name and address appeared on the backpack. They found that the backpack and stereo equipment were stolen property. This Court reversed the conviction, rejecting the State's claim that the evidence was rightly seized under the plain view doctrine. The Court found no evidence in the record that

---

5. *See Hicks,* 480 U.S. 321, 107 S.Ct. 1149 (presence of expensive stereo equipment in "squalid" apartment insufficient to invoke probable cause).

it was immediately apparent to the investigating officers that they had discovered evidence of criminal activity. The mere presence of these items in the apartment was not enough to formulate a probable cause determination. The Court stated: "We fail to see that the mere presence of the [credit] card, even together with appellant's lack of knowledge of the owner's name, rose to the level of probable cause that the card was stolen." *White*, 729 S.W.2d at 741. In the State's brief, it distinguishes *White* from the instant case on the basis that in *White* the officers had to move the equipment in order to see the serial numbers, and therefore the evidence was not "immediately apparent." The State's reliance on *White* for this proposition is misplaced. We specifically stated in *White* that the stereos were not moved. *White*, 729 S.W.2d at 741. Rather, we found in *White* that the officers had no probable cause to believe that the stereos were stolen when they first saw them. *Id.* It was only after further investigatory steps that the officers developed probable cause to believe the property was stolen. Likewise, it was not immediately apparent in the case at bar that the officer upon viewing the outside of the greeting card had probable cause to believe it contained incriminating evidence. The officer's further investigatory step of bringing into view and reading the contents of the letter effected the probable cause determination, but such reading went beyond the scope of the search.

Another case with similar facts to the instant case is *Nicholas v. State*, 502 S.W.2d 169 (Tex.Cr.App.1973). In *Nicholas*, officers arrested the defendant as a fugitive from another state. While on the premises of his residence, officers discovered photographic negatives in "plain view" on a bar out of reach of defendant. The officers had no knowledge or suspicion that the negatives evidenced criminal activity. The officers in further investigation held the negatives up to the light to see the

contents and determined the negatives contained evidence of a crime. The negatives did not become incriminating until after the officers inspected them. The Court therefore found that it was not "immediately apparent" to the officers that they had discovered criminal evidence. *Id.* at 172. Thus, the evidence in that case was not properly seized.

To reiterate, in the case *sub judice*, there is no evidence that when the officer removed the greeting card from its envelope it was "immediately apparent" the card contained evidence of criminal activity. The officer's own trial testimony established that he knew there was no marijuana in the envelope or the letter prior to his reading the letter. To discover a criminal connection, it was necessary to undertake additional investigation and inspection to find incriminating evidence, as in *Nicholas* and *White*. Thus, the officer improperly searched and seized the contents of the letter.[6] We find that the initial search, i.e., the reading of the letter, and its seizure were unreasonable under the circumstances. The court of appeals incorrectly ruled that the contents of the letter provided a nexus between the appellant and criminal activity. The nexus finding is inapplicable in the instant case because the nexus upon which the court of appeals based its decision was the result of an illegal search and seizure, and is therefore invalid. Thus, we hold that the trial court committed error in admitting the letter as evidence.

The judgment of the court of appeals is reversed and the cause remanded to that court for a harm analysis consistent with Rule 81(b)(2), Tex.R.App.Pro. See *Harris v. State*, 790 S.W.2d 568 (Tex.Cr.App.1989).

OVERSTREET and MALONEY, JJ., not participating.

6. Appellant also urges the reading of his mail exceeded the bounds of federal and state constitutional limitations on search and seizure. He contends that he has a reasonable expectation of privacy in his personal mail, citing *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Because we reverse this case on other grounds, we decline to address the expectation of privacy issue. We note only that the officer in the instant case, upon reading appellant's personal mail, found only this one item to be incriminating.