**Richard Kenneth HALEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 774–90 to 776–90.**

Court of Criminal Appeals of Texas, En Banc.

June 12, 1991.

---

**7.** Though *Horton,* 110 S.Ct., at 2304, dispenses with the condition #2 requirement of inadvertent discovery, we do note that the DPS officer's discovery does meet the standards for inadvertence. There has been no showing that he knew in advance the location of the evidence and intended to seize it nor was there any systematic general exploration for expected or unexpected evidence.

Henry C. Paine, Jr., Denton, for appellant.

James M. Kuboviak, County Atty., and Sandra L. Dent, Asst. County Atty., Bryan, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

OVERSTREET, Judge.

Appellant was convicted in a bench trial before the court in three separate informations of the misdemeanor offenses of: 1) distributing in commerce an improperly packaged and labeled consumer commodity, to-wit: digitalis; 2) engaging in the whole-sale distribution of a drug, to-wit: digitalis, without first filing the requisite registration statement with the commissioner of health; and 3) adulterating and misbranding a drug, to-wit: digitalis, in commerce; all in contravention of various provisions of the Texas Food, Drug, and Cosmetic Act. The trial court took judicial notice of all of the testimony and documentary evidence adduced in two previous trials, one of which was before a jury, involving other misdemeanor offenses arising from the same seizure of evidence. After the finding of guilt, the trial court sentenced appellant to 180 days in county jail and a $1,500 fine in each case per a sentencing agreement. Appellant's sole ground for review in all three causes complains of the trial court's purported denial of his motion to suppress evidence seized, and fruits arising therefrom, and the court of appeals' affirmance thereof.

■ Our review of the record indicates that a motion to suppress was filed in all three causes that are before us; however, there is absolutely nothing to indicate that hearings were ever held thereon or that they were ever ruled upon. Interestingly, both the appellant and the State as well as the court of appeals aver that those motions were denied. The confusion may come from the state of the somewhat overly voluminous record and the trial court proceedings in the three causes before us. The record before us contains statements of facts from four separate trials involving six different trial court cause numbers (# 327–87, 328–87, 329–87, 325–87, 326–87, and 17,433–272). Only three of these causes are before us on this appeal; specifically # 327–87, 328–87, and 329–87. Each transcript of those three causes includes what appears to be an identical file-marked instrument styled "Motion to Suppress Evidence." These instruments include an "Order" with blank spaces for items suppressed, but none of the orders are signed by the trial judge. Apparently, they were not presented and ruled upon. One of the four statements of facts included in this

record contains the transcription of the consolidated bench trial of the three causes before us. That statement of facts does not indicate whether these suppression motions were ever ruled upon. The trial was a plea of not guilty before the court on all three causes with the trial court taking judicial notice of all of the testimony and documentary evidence presented at two previous misdemeanor trials. (The trial court did not take judicial notice of the proceeding transcribed in the fourth statement of facts which is included in the record before us. That proceeding was of a felony offense from a local district court and did involve a hotly contested hearing on a motion to suppress evidence.) Though the record does not include copies of the actual motions, the statements of facts from those two prior misdemeanor trials indicate that they each involved an attempt to argue apparently untimely filed motions to suppress evidence. (However in one of those misdemeanor trials, the statement of facts indicates that the trial court did deny a "Motion in Limine" after hearing testimony and argument that certainly seemed to be urging evidence suppression.) So it would seem that there was only one suppression motion that was actually heard and ruled upon and that was in the felony case that is not before us on this appeal.[1] Thus, the court of appeals' ruling that the trial court's denial of appellant's suppression motion was supported by the evidence was not correct since the record does not reflect any such denial.

■ When the State requested the trial court to take judicial notice of the aforementioned two previous misdemeanor proceedings, appellant vigorously objected generally and specifically reurging objections from the prior proceedings. The trial court overruled those objections, so appellant did preserve his claim of error. Since the basis of appellant's petition for discretionary review was whether the court of appeals was correct in declining to reverse the trial court's admission of this evidence, we shall review that decision.[2]

The record (i.e., the statements of facts from the two proceedings which the trial court took judicial notice of) reveals that in February of 1987, a Texas Department of Health investigator received information from a Texas Department of Public Safety (DPS) officer regarding possible illegal repackaging and distribution of drugs at a building (Why Weight Medical Clinic) owned by appellant in Kurten, Brazos County, Texas. On February 5, 1987, they both went before a local magistrate and secured an inspection warrant, pursuant to Article 18.05, V.A.C.C.P., authorizing the health inspector to inspect the premises of Why Weight Medical Clinic. The DPS officer accompanied the health investigator to the building and they entered through an unlocked slightly ajar door. The health inspector testified that he observed repacked digitalis. He also noted that their expiration dates had long since passed and they were thus out-of-date. Two employees were observed working in the presence of those repacked pills. The employees' testimony at trial confirmed that they had, at the direction of and on occasion accompanied by appellant, sorted and separated corroded "groty looking" pills and then repackaged and mailed others to customers, some of which were to out-of-state addresses. These drugs were chemically determined to contain digitalis. Though the DPS officer did not testify at any of the proceedings in the record of these causes, the health inspector testified that he himself detained and merely took samples from the drugs. Though he admitted helping gather the drugs, his testimony indicates that in effect the DPS officer actually seized them. The drugs were taken to a DPS lockup storage facility by other DPS officers who were called to the scene. The question at hand is whether the DPS offi-

---

1. We do note that that felony case was before us in *State v. Haley,* 811 S.W.2d 597 (Tex.Cr.App., 1991).

2. Appellant's sole ground for review in each of the three instant causes is "The Court of Appeals erred in holding that the trial court properly refused to grant the petitioner's Motion to Suppress Evidence Seized as the results of entry under authority of the public health statutes."

cer was lawfully authorized to seize the drugs.

It has been very well-settled that items in "plain view" may be seized by law enforcement personnel if each of the three conditions set forth in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) are met. These conditions include: 1) the initial intrusion must be proper, in other words, that the police have a right to be where they are when the discovery is made; 2) the discovery of the evidence must be inadvertent; and 3) it must be "immediately apparent" to the police that they have evidence before them (i.e., probable cause to associate the property with criminal activity). *Stoker v. State*, 788 S.W.2d 1, 9 (Tex.Cr.App.1989); *White v. State*, 729 S.W.2d 737, 739 (Tex.Cr.App. 1987); *Williams v. State*, 668 S.W.2d 692, 699 (Tex.Cr.App.1983). However, the United States Supreme Court has recently modified the criteria in that "inadvertence" is no longer a necessary condition of a legitimate "plain view" seizure. *Horton v. California*, —— U.S. ——, ——, 110 S.Ct. 2301, 2304, 110 L.Ed.2d 112, 118 (1990).

With regard to condition # 3, the totality of the circumstances indicates that based upon all that was within view upon entry into the building, including pills lying out on a table, repackaged pills with decade-old expiration dates, and corroded boxes, it was indeed "immediately apparent" to the DPS officer that he had evidence before him; specifically, contraband and instrumentalities used in illegally repackaging expired, misbranded, adulterated drugs for introduction into commerce.

With regard to condition # 1, as stated earlier, the initial intrusion must be proper, i.e., the police must have had the right to be where they were when the discovery was made. The record reveals that the DPS officer's initial entry into the building was lawful. He was merely accompanying the health investigator who was making an inspection authorized via provisions of the Texas Food, Drug, and Cosmetic Act, specifically TEX.REV.CIV.STAT. art. 4476–5 § 25 (Vernon Supp.1987), repealed and now codified as TEX.HEALTH & SAFETY CODE ANN. § 431.042 (Vernon Pamph. 1991), and the previously mentioned Article 18.05 inspection warrant. That investigator testified that it was not unusual for him to be assisted by law enforcement agencies and to be transported by them in one of their vehicles.[3] There was no forced entry into the building. The DPS officer's initial intrusion was clearly proper.

We thus conclude that the complained of evidence was properly seized pursuant to the "plain view" doctrine.[4] We therefore hold that the court of appeals was correct in declining to reverse the trial court's admission of the challenged evidence. The judgment of the court of appeals is hereby affirmed.

CLINTON, Judge, dissenting.

These causes present an anomaly, the likes of which rarely confront this Court. Out of a single "administrative" entry and seizure of materials there arose several prosecutions, mostly misdemeanors, but at least one felony; on appeals from those convictions, misdemeanors went to the First Court of Appeals, the felony to the Fourteenth Court of Appeals. The First Court upheld the seizure on one legal theory (plain view); the Fourteenth ruled out its fruits on another (unauthorized seizure). Indeed, each petitioning party claims as a reason for review that the decision should be examined because it is in conflict with that of the other. Today this Court says the First is correct and concomitantly the Fourteenth is wrong—both on the basis of a common legal theory that the latter court did not address and the State does not

---

3. Apparently, he was not officed locally because he testified that he was in Austin on February 5, 1987 and then came to Bryan for an investigation.

4. Though *Horton*, 110 S.Ct. at 2304, dispenses with the condition # 2 requirement of inadvertent discovery, we do note that the DPS officer's discovery does meet the standards for inadvertence. There has been no showing that he knew in advance the location of the evidence and intended to seize it nor was there any systematic general exploration for expected or unexpected evidence.

invoke in the grounds for review we granted.

The decision of the Fourteenth Court of Appeals is properly based on the reasons explicated in its opinion, which correctly finds and applies the applicable law. Thus, I could affirm the judgment of the Fourteenth Court and reverse the judgment of the First Court.

Because the majority does not, I respectfully dissent.