

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

NO. PD-0873-09

**THE STATE OF TEXAS**

**v.**

**MATTHEW RYAN DOBBS, Appellee**

ON STATE'S PETITION FOR DISCRETIONARY REVIEW
FROM THE FIFTH COURT OF APPEALS
COLLIN COUNTY

PRICE, J., delivered the opinion of the Court in which KELLER, P.J., and MEYERS, JOHNSON, KEASLER, HOLCOMB, and COCHRAN, JJ., joined. WOMACK and HERVEY, JJ., concurred in the result.

## O P I N I O N

While executing a lawful search of the appellee's residence pursuant to a warrant, police officers in this cause came upon items in plain view that they lacked probable cause to believe were connected to any crime. While still lawfully on the premises, however, they conducted further investigation and determined that the items were stolen property, seizing them accordingly. The Fifth Court of Appeals held, on the strength of this Court's opinion

in *White v. State*,[1] that the seizure violated the Fourth Amendment to the United States Constitution because it had not been "immediately apparent" to the officers that the items were stolen.[2] We granted the State's petition for discretionary review to re-examine our holding in *White.* We now hold that, so long as probable cause to believe that items found in plain view constitute contraband arises while police are still lawfully on the premises, and any further investigation into the nature of those items does not entail an additional and unjustified search of, or unduly prolonged police presence on, the premises, the seizure of those items is permissible under the Fourth Amendment. We disavow *White* to the extent that it is inconsistent with our present holding.

## FACTS AND PROCEDURAL POSTURE

In the course of executing a search warrant for narcotics at 1608 Sherrye Lane in Plano, police officers came upon two sets of golf clubs out in the middle of the floor of one of the bedrooms. The clubs looked brand new. In a closet of the same room, the officers discovered brand new golf shirts with a Los Rios Country Club logo embroidered on them. It is uncontested that at this time the officers lacked probable cause to believe that these items were connected to any crime, but they were suspicious. The officers contacted dispatch to

---

[1] 729 S.W.2d 737 (Tex. Crim. App. 1987).

[2] *State v. Dobbs*, No. 05-08-00840-CR, 2009 WL 692681 (Tex. App.—Dallas, delivered March 18, 2009).

inquire whether there had been any reports of recent burglaries, especially of a country club. They were informed by a burglary detective that the Los Rios Country Club had indeed reported the theft of golf merchandise. The officers then made contact with the country club to confirm the report and obtain a description of the stolen property. This description gave the officers probable cause to believe that the items they had come across in plain view in the bedroom were those that had been stolen from the country club. The officers then seized the golf clubs and the golf shirts. The appellee was later charged with theft.

The appellee filed a pre-trial motion to suppress these items as the product of an unlawful search and seizure. He argued that, because the police officers did not have probable cause to seize the items at the moment they discovered them in plain view in the bedroom, it had not been "immediately apparent" to them that the items constituted stolen goods. Relying on this Court's opinion in *White*, the appellee maintained that police may not lawfully seize items in plain view if they must conduct some "further investigation" to develop probable cause to believe the items constitute contraband.[3] The trial court agreed with the appellee that *White* was controlling, and reluctantly granted the appellee's motion to suppress. The State appealed, but the court of appeals also held that *White* controlled, and affirmed the trial court's ruling.

In *White*, following an altercation between two tenants, the apartment manager invited

---

[3]

    *White v. State*, *supra*, at 741.

police officers into White's apartment to inspect purported damage to the premises. While in the apartment, the officers observed, *inter alia*, a backpack. Without disturbing it, the officers were able to record a name and address from the backpack. They left the apartment and, from the manager's apartment, telephoned the records and identification section of the police department and were informed that the person named on the backpack had filed a burglary complaint. A phone call to the complainant confirmed that several items the officers had observed in White's apartment had been taken in the burglary, and they returned to White's apartment and seized them.

The court of appeals in this case expressly relied upon the following excerpt from our opinion in *White* in holding that the seizure of the golf merchandise in this case was not authorized under the plain view doctrine:

> It is well settled in this State that items in "plain view" may not be *seized* if the officer does not have reason to believe that they are evidence, or fruits of, or instrumentalities of a crime. [Citations omitted] That standard is today expressly extended to *searches* conducted pursuant to the plain view doctrine. In the case at bar, the record is devoid of any evidence that it was "immediately apparent" to the inspecting officers that the property discovered was evidence of a crime. Thus, the officers lacked probable cause for further investigation. *Arizona v. Hicks*, [480 U.S. 321 (1987)].[4]

In effect, we held in *White*, on authority of *Arizona v. Hicks*, that when police officers lack probable cause to believe items in plain view are contraband at the very instant they first see

---

[4] *State v. Dobbs*, *supra*, slip op. at *4, *quoting White v. State*, *supra*, at 741.

them, they must have probable cause to conduct any further investigation specifically designed to develop probable cause to authorize their seizure of those items. In its petition for discretionary review, the State argues that *White* overextends the legitimate scope of Fourth Amendment protection. We agree with the State's assessment.

## ANALYSIS

A police officer in a public place has the authority to seize anything he has probable cause to believe constitutes contraband, without the necessity of a warrant.[5] A police officer who is lawfully on private premises pursuant to a warrant (or some legitimate exception to the Fourth Amendment requirement of a warrant) may also seize anything he discovers in plain view on those premises if it is "immediately apparent" to him—that is to say, if he has probable cause to believe—that it constitutes contraband, without the necessity of obtaining a second warrant to justify the seizure.[6] Because such an officer is legitimately on the private premises, and so long as he has not exceeded the authority granted him by the warrant or the exigency that legitimizes his presence in the first place, he may seize any item in plain view that probable cause tells him is contraband. He may seize this item, just as he would be permitted to seize any item in public that it was "immediately apparent" to him was

---

[5]

*Texas v. Brown*, 460 U.S. 730, 738 (1983) (plurality opinion); *Arizona v. Hicks*, 480 U.S. 321, 326-27 (1987).

[6]

*E.g.*, *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993).

contraband, without first obtaining a warrant.

In this case, the police were legitimately on the private premises by virtue of a search warrant authorizing them to look for and to seize illicit drugs, namely, marijuana and cocaine.  While executing this warrant, they came across the golf clubs and shirts in issue here.  The golf clubs sat in the middle of the floor in a room that the officers were permitted to enter under the warrant, and the shirts lay on a shelf in a closet of the room that they were permitted to search for the drugs specified in the warrant.  These items were, therefore, in plain view.  The only question for the trial court at the appellee's motion to suppress hearing was whether it was "immediately apparent" to the officers that these items were contraband in contemplation of the Supreme Court's plain-view doctrine.

Based on this Court's opinion in *White*, both the trial court and the court of appeals held that it was *not* immediately apparent to the officers that these items were stolen.[7]  And indeed, it is undisputed on the record that, at the instant the officers came across the golf clubs and the shirts, they lacked probable cause to believe these items were stolen.  It was not until after the officers, while remaining on the premises, conducted further investigation that they developed probable cause.  *White* construed the plain-view doctrine to require that, if police officers do not instantly recognize an item in plain view to be contraband, then they must  have "probable cause for further investigation" to develop probable cause to believe

---

[7] *State v. Dobbs*, *supra*, slip op. at *5.

the item is contraband before they may seize it.[8]  *White* cited *Arizona v. Hicks* for this proposition.[9]  Understandably, both the trial court and the court of appeals abided by our holding in *White* in upholding that appellee's motion to suppress.[10]

The State argues that *White* mistakenly relied on *Hicks* for the proposition that the plain-view doctrine requires probable cause for further *investigation* whenever it is not immediately apparent that items discovered in plain view are contraband.  Only if that investigation entails an additional *search* of the private premises beyond the scope of the search already authorized by the warrant or exigency that originally justified the police presence on the premises, the State maintains, should the officers be required to have probable cause to look for probable cause to seize the plain-view items.  Otherwise, the investigation does not incrementally impinge upon any protected privacy or possessory interest of the defendant.

We agree.  The further investigation that the officers undertook in this cause did not involve any search of the premises that was not already authorized by the search warrant.  So the appellee's privacy interest was not compromised.  Nor were the golf clubs and shirts actually seized until after the officers, still legitimately on the premises, developed probable

---

[8]  729 S.W.2d at 741.

[9]  480 U.S. 321 (1987).

[10]  *State v. Dobbs*, *supra*.

cause to believe they were stolen, by conducting further investigation that did not involve an unjustifiedly incremental search of the actual premises. So the appellee's possessory interest *was* compromised—but legitimately so, even without an additional warrant. It does not serve the interests of the Fourth Amendment to construe the "immediately apparent" aspect of the plain-view doctrine to prohibit this kind of further investigation because it does not impact either the privacy or the possessory rights of the defendant beyond the encroachment already legitimized by the warrant.[11]

To appreciate the sensibleness of this understanding of the plain-view doctrine, suppose the facts were slightly altered. Suppose that at the instant the officers executing the search warrant had originally come across the golf clubs and shirts, they had thought nothing of it and conducted no further investigation of those items. Then suppose an officer in the burglary division had called one of the searching officers to inform him to be on the lookout for stolen golf clubs and shirts on the premises, describing them with particularity, because of probable cause the burglary division had just developed, independently of the officers executing the warrant, to believe these items were stolen. What was not "immediately" apparent to the searching officers would now be readily apparent, while the officers are still

---

[11]

 An investigation that does not impinge upon a defendant's legitimate privacy or possessory interest does not implicate Fourth Amendment protections. *E.g.*, *Illinois v. Caballes*, 543 U.S. 405 (2005) (canine alert for narcotics in trunk of car during the course of legitimate traffic stop (*i.e.*, not extended beyond scope of original justification for the stop) does not violate Fourth Amendment because it reveals only the presence of contraband and therefore does not impinge upon any legitimate expectation of privacy).

on the premises and legitimately conducting their search. They would now have probable cause to seize the stolen items. Under these circumstances, it makes no more sense to require an additional warrant to justify seizing the items than it would to require a warrant to seize apparent contraband that is found in a public place. Moreover, it should make no difference that the searching officers generated their own probable cause while still on the premises, so long as their investigation did not entail any greater intrusion on the premises (from which the defendant's privacy interest, after all, derives) than the intrusion already legitimately underway.[12]

The Supreme Court has construed "immediately apparent" to mean simply that the viewing officers must have probable cause to believe an item in plain view is contraband before seizing it.[13] So long as the probable cause to believe that items in plain view

---

[12]

Suppose, on the other hand, that the search of the premises had been expanded, not physically, but temporally, beyond the time it should reasonably have taken for the officers to execute the warrant, because of their ancillary investigation into the status of the golf clubs and shirts. Such a scenario might well have constituted an unjustified invasion of the appellee's privacy interest, invoking the Fourth Amendment's exclusionary rule. But the trial court expressly found that no such temporal expansion of the warranted search occurred. The judge explicitly stated on the record:

> There is nothing in the record . . . that leads this trial judge to believe that the Plano Police Department was intentionally or otherwise inappropriately taking their time or stalling or whatever verb you want to use, merely as a pretext to give them the opportunity to further investigate. I don't believe that and there's nothing credible that raises that issue.

Our independent review of the record bears out this finding, and the appellee does not challenge it.

[13]

E.g., *Minnesota v. Dickerson*, *supra*, at 375 ("If . . . the police lack probable cause to believe that an object in plain view is contraband without some further search of the object—i.e., if its

constitute contraband arises while the police are still lawfully on the premises, and their "further investigation" into the nature of those items does not entail an additional and unjustified search of (*i.e.*, a greater physical intrusion than originally justified), or presence on (*i.e.*, a longer intrusion than originally justified), the premises, we see no basis to declare a Fourth Amendment violation. Supreme Court precedent does not dictate that we construe "immediately apparent" necessarily to mean "quickly apparent." Rather, "immediately apparent" in this context means without the necessity of any further search.[14]

To the extent that we broadly held in *White* that *Hicks* requires probable cause to justify *any* "further investigation" to develop probable cause to seize items in plain view, we now expressly disavow it. Although we believe that the Court reached the correct result in *White*,[15] we erred to announce categorically that the officers there needed "probable cause

---

incriminating character is not immediately apparent—the plain view doctrine cannot justify its seizure.") (internal citations omitted).

[14] Historically, the first sense in which the word "immediate" was used in English was to denote a causational rather than a temporal relationship. *See* WEBSTER'S THIRD INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE, UNABRIDGED 1129 (2002) ("**1 a:** acting or being without the intervention of another object, cause, or agency: DIRECT, PROXIMATE ⟨the ~ cause of death⟩"). We think this is the sense in which the Supreme Court almost certainly intended that the phrase "immediately apparent" should be understood in the context of its plain-view jurisprudence, *viz.*, that the character of the item as evidence or contraband be apparent without the intervention of any additional invasion of a privacy or possessory interest.

[15] The police in *White* were invited into the apartment by the manager to inspect purported damage after a fracas. Finding no such damage, they nevertheless tarried in the apartment to conduct what was essentially an exploratory search. Without yet having generated probable cause to seize anything, they exited the apartment but continued their investigation. Only after they left did they establish probable cause to believe certain items they had viewed in the apartment were stolen. Not

for further investigation."[16] Unless it involves a greater search of the premises than that which is initially authorized, or in some other manner invades a legitimate privacy interest,[17] a "further investigation" of the kind that occurred both in *White* and in this case need not *itself* be justified by probable cause before it can permissibly supply the probable cause to support a plain-view seizure of contraband.

## CONCLUSION

Without faulting the court of appeals for following precedent, we nevertheless reverse its judgment upholding the appellee's motion to suppress and remand the cause to the trial court for further proceedings not inconsistent with this opinion.

DELIVERED:       October 20, 2010
PUBLISH

---

only did their initial search of the apartment exceed the original justification for entering it, they actually left the apartment before obtaining probable cause. Under these circumstances, they should have obtained a warrant before re-entering the apartment and seizing the stolen items.

[16] 729 S.W.2d at 741.

[17] *See* note 12, *ante*.