

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-11-00618-CR

Paul J. **LAMARRE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2010CR5980
Honorable Maria Teresa Herr, Judge Presiding

Opinion by:      Marialyn Barnard, Justice

Sitting:         Catherine Stone, Chief Justice
                 Karen Angelini, Justice
                 Marialyn Barnard, Justice

Delivered and Filed:  March 1, 2013

AFFIRMED AS MODIFIED

A jury found appellant Paul J. Lamarre guilty on 22 counts of possession of child pornography. The trial court sentenced appellant to ten years confinement on each count.[1] On appeal, Lamarre complains the trial court erred in: (1) denying his motion to suppress; and (2) admitting "extraneous victim impact testimony" from two witnesses during the punishment phase of the trial. The State raises a single cross-point asking this court to reform the judgments

---

[1] The State has raised a cross-point regarding whether the sentences are to run consecutively or concurrently. We shall address this issue below.

because the written judgments do not conform with the trial court's oral pronouncement of sentence. We affirm the trial court's judgments as modified.

## BACKGROUND

In October 2007, Special Agent Carla Schreiber of the FBI Cyber-Crimes Unit in San Antonio received information from the FBI in Newark, New Jersey about an email account registered to Paul Lamarre of San Antonio, Texas. According to the FBI, Lamarre's email account contained seven or eight child pornography images.

Based on the information she received from her counterparts in New Jersey, Special Agent Schreiber attempted to locate Lamarre by enlisting the help of a local law enforcement task force. The special agent was ultimately assisted by Bexar County Sheriff's Deputy Shawn Tobleman, who was assigned to the local task force known as the "Innocent Images Unit," a unit that works with the FBI Cyber-Crimes Unit. This unit investigates child pornography and crimes against children on the Internet. Ultimately, it was discovered that Lamarre was living at the home of Michael Zureich.

The special agent went to Zureich's home to speak to Lamarre, who denied any knowledge of the email account. Special Agent Schreiber asked to search the computers in the home. Lamarre consented to the search, but explained he did not have a computer and was using one that belonged to Zureich. There was no child pornography found on the computer belonging to Zureich. On July 1, 2009, after additional evidence regarding Lamarre failed to surface, Special Agent Schreiber terminated her investigation. However, Deputy Tobleman continued to monitor Lamarre and his whereabouts.

On September 4, 2009, Juliette Sanders placed a call to the FBI complaint desk. Sanders advised she was concerned about her roommate, who she identified as Lamarre. Sanders believed Lamarre was viewing child pornography on his computer. The agent–on–duty ran a

background check on Lamarre and discovered an outstanding arrest warrant for a child support issue. The agent informed the San Antonio Police Department, which sent a marked car to Sanders's residence. The San Antonio police arrested Lamarre based on the outstanding child support warrant.

Special Agent Schreiber and Deputy Tobleman learned about Sanders's complaint. The day Lamarre was arrested, Special Agent Schreiber and Deputy Tobleman interviewed Sanders and her minor son at the Sanders home. Sanders told the investigators she believed Lamarre was viewing child pornography on his computer. Sanders reported that on several occasions Lamarre viewed a sexually explicit photo of her son's girlfriend on her son's cell phone. She also informed the investigators that when she went to the community pool with Lamarre, he spent his time looking at young girls, who appeared to be twelve-years-old and under. Sanders went on to say that when she and Lamarre went to a friend's party, Lamarre spent his time with the children rather than the adults, carrying one of the little girls on his shoulder.

Sanders's son was fourteen-years-old when Lamarre moved in with them. The son told Special Agent Schreiber that Lamarre showed him a pornographic video on Lamarre's computer. According to the son, the video depicted three adult men having sexual intercourse with an underage girl. The son also told Special Agent Schreiber that Lamarre said they ought to get the son's fourteen–year–old girlfriend drunk and "tag team" her.

Immediately after the interview, Deputy Tobleman began the process to obtain a search warrant for Lamarre's computer. However, before he obtained the search warrant, Deputy Tobleman seized Lamarre's computer "for safe keeping." On September 17, 2009, Deputy Tobleman prepared and filed the affidavit to obtain the search warrant, which was issued the same day. Thereafter, Deputy Tobleman searched Lamarre's hard drive and found twenty-two

videos containing child pornography. Ultimately, Lamarre was charged with possession of child pornography. After a jury trial, he was found guilty. Lamarre then perfected this appeal.

### ANALYSIS

In his first point of error, Lamarre contends the trial court erred in denying his motion to suppress. In his second and third points of error, Lamarre complains about the admission of certain testimony during the punishment phase of the trial. The State raises a cross-point relating to an alleged conflict between the trial court's oral pronouncement of sentence and the written judgments. We shall address each issue in turn.

### *Motion to Suppress*

Lamarre argues the trial court erred in denying his motion to suppress because: (1) his computer was seized without a warrant; and (2) the affidavit supporting the warrant "contained statements that were deliberate falsehoods or made in reckless disregard of the truth." We shall discuss each complaint separately.

### *Standard of Review*

We review a trial court's ruling on a motion to suppress evidence for abuse of discretion using a bifurcated standard. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010); *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). We give almost total deference to a trial court's determination of facts and review the trial court's application of the law de novo. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). A trial court's application of the law to the facts is affirmed if the ruling is "reasonably supported by the record and is correct on any theory of law applicable to the case." *Valtierra*, 310 S.W.3d at 447–48. Furthermore, when the trial court does not issue findings of fact and none are requested, as in this case, we imply findings that support the trial court's ruling if the evidence, when viewed in the light most favorable to the

ruling, supports those findings. *Id*; *Montanez v. State*, 195 S.W.3d 101, 106 (Tex. Crim. App. 2006). The trial court is the sole judge of the credibility of the witnesses and their testimony. *Maxwell*, 73 S.W.3d at 281.

<em>Warrantless Seizure of Computer</em>

Lamarre first contends the trial court erred in denying his motion to suppress because the warrantless seizure of his computer on September 4, 2009, was unreasonable and violated his rights under the Fourth Amendment. We disagree.

When a police officer is in a place where he is lawfully entitled to be, he may seize, without a warrant, anything he has probable cause to believe constitutes contraband. *State v. Dobbs*, 323 S.W.3d 184, 187 (Tex. Crim. App. 2010) (citing *Texas v. Brown*, 460 U.S. 730, 738 (1983) (plurality opinion); *Arizona v. Hicks*, 480 U.S. 321, 326–27 (1987)). Probable cause exists when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a man of reasonable prudence to believe the item to be seized is contraband. *Parker v. State*, 206 S.W.3d 593, 597 (Tex. Crim. App. 2006).

In this case, when Deputy Tobleman questioned Sanders and her minor son at Sanders's home, Sanders told him she believed Lamarre was viewing child pornography on his computer. The deputy specifically testified that Sanders "reported that there was child pornography on the computer." Sanders's minor son also told the deputy that Lamarre showed him a pornographic video on Lamarre's computer. According to the son, the video depicted three adult men having sexual intercourse with an underage girl. The deputy questioned the minor son, asking him if he was sure the female on the video was under the age of eighteen, and the son stated he was sure.

Deputy Tobleman testified Lamarre's computer was "sitting on a table in the open area of the living room." The deputy also testified he knew Lamarre had been taken into police custody

on a child support warrant, but did not know when Lamarre would get out of jail. The deputy stated he seized the computer "for safe keeping."

Thus, Deputy Tobleman, who was legitimately in the Sanders home, had probable cause to believe that Lamarre's computer constituted contraband, given the statements by Sanders and her minor son. It is not necessary that the item seized be instantly *recognizable* as contraband; rather, the viewing officer merely needs probable cause to believe the item in plain view is contraband before he seizes it. *Dobbs*, 323 S.W.3d at 188. "So long as the probable cause to believe that items in plain view constitute contraband arises while the police are still lawfully on the premises, and their 'further investigation' into the nature of those items does not entail an additional and unjustified search of . . . or presence on . . . the premises, [there is] no basis to declare a Fourth Amendment violation." *Id.* at 189. Here, there was no additional search of the premises, i.e., the Sanders home, and the subsequent search of the computer was conducted pursuant to a warrant.

The trial court was entitled to believe the deputy's testimony about what Sanders and her son told him. *See Maxwell*, 73 S.W.3d at 281. The court was also entitled to believe the computer was in plain view in the living room. *See id.* Because the deputy was in a place where he was legally entitled to be, and because the trial court could have determined the deputy had probable cause to believe the computer, which was in plain view, was contraband, we hold the trial court did not abuse its discretion in overruling the motion to suppress.

### *Affidavit Supporting Warrant*

Lamarre next contends the trial court erred in denying his motion to suppress because Deputy Tobleman's affidavit, which supported the search warrant for the computer, contained deliberate falsehoods or statements made in reckless disregard of the truth. Lamarre challenges the following statements in the affidavit:

> During the FBI investigation they identified the email address [    ]. The email address was identified on a seized computer in Newark, N.J. as the email address used to send email to the seized computer. A subject utilizing the email address engaged in the distribution of 7 images. These images are in violation of the Texas Penal code section 43.26, in that they display unclothed girls under the age of 17, and the children are performing oral sex on male subjects in the images.

Lamarre contends this portion of the affidavit contains material misrepresentations of the facts because the deputy failed to advise the court in the affidavit that the investigation that uncovered this information occurred two years before; that during the investigation Lamarre's computer was scanned and no pornographic images were found and that the FBI had closed the case. Lamarre contends the omitted information amounted to misstatements of fact made intentionally or with reckless disregard to the truth.

> Lamarre also contests the portion of the deputy's affidavit, which states:
>
> [I]t is the belief of affiant that in the suspected place there will be found items constituting contraband, and the instruments in the commission of a crime under the Texas Penal Code, to wit: § 43.26. Possession of Promotion of Child Pornography; in violation of the laws of Texas. Such items will consist of the following:
>
> 5. Computers . . . .
>
> 6. Computers, personal computers, computer systems, central processing units, computer peripherals . . . .
>
> 7. Electronic communications stored in computers . . .

The affidavit concludes by requesting a search warrant that would authorize a search of Sanders's home "for said personal property and seizure of the same (including the computer hardware housing it)." Lamarre contends the deputy failed to advise the court that the computer had already been seized for "safe keeping" on September 4, 2009, thirteen days before the affidavit was executed. Lamarre further contends the items listed in the warrant were not at the location stated in the warrant and the deputy knew this because he has already seized the items

"for safe keeping." Given that the items had already been seized, and this was known to Deputy Tobleman, Lamarre contends these statements were deliberate falsehoods or at a minimum, made in reckless disregard of the truth.

Lamarre argues that if these "falsehoods" or statements "made in reckless disregard of the truth" are removed from the affidavit, the affidavit is insufficient to support a finding of probable cause. Therefore, the trial court erred in denying his motion to suppress. Again, we disagree.

Under *Franks v. Delaware*, a defendant may challenge the truth of an affidavit used to obtain a search warrant only if he "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." 438 U.S. 154, 155–56 (1978); *see Harris v. State*, 227 S.W.3d 83, 85 (Tex. Crim. App. 2007). "In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks*, 438 U.S. at 156. The Texas Court of Criminal Appeals made it clear that to be entitled to a *Franks* hearing a defendant must:

(1) allege deliberate falsehood or reckless disregard for the truth by the affiant, specifically pointing out the portion of the affidavit claimed to be false;

(2) accompany these allegations with an offer of proof stating the supporting reasons; and

(3) show that when the portion of the affidavit alleged to be false is excised from the affidavit, the remaining content is insufficient to support issuance of the warrant.

*Harris*, 227 S.W.3d at 83 (citing *Cates v. State*, 120 S.W.3d 352, 356 (Tex. Crim. App. 2003), (quoting *Ramsey v. State*, 579 S.W.2d 920, 922–23 (Tex. Crim. App. 1979)). In other words, an attack on the truth of an affidavit supporting a search warrant "must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Harris*, 227 S.W.3d at 85 (quoting *Franks*, 438 U.S. at 171). The Texas Court of Criminal Appeals has not recognized that a *Franks* analysis pertains to omissions as well as false statements. *See Brooks v. State*, 642 S.W.2d 791, 796–97 (Tex. Crim. App. [Panel Op.] 1982). However, the Fifth Circuit, along with other Texas appellate courts, has concluded that allegations of material omissions are to be treated the same as claims of material misstatements. *See United States v. Martin*, 615 F.2d 318, 328 (5th Cir. 1980); *Blake v. State*, 125 S.W.3d 717, 724 (Tex. App.—Houston [1st Dist.] 2003, no pet.); *Heitman v. State*, 789 S.W.2d 607, 610–11 (Tex. App.—Dallas 1990, pet. ref'd); *Melton v. State*, 750 S.W.2d 281, 284 (Tex. App.—Houston [1st Dist.] 1988, no pet.). Accordingly, we will apply the *Franks* analysis to Lamarre's allegations.

Apparently having determined that Lamarre made the initial showing required by *Franks* and *Harris*, the trial court held a hearing on the motion to suppress during the trial, out of the presence of the jury. During the hearing, Lamarre argued there was no probable cause to issue the warrant based on the four corners of the affidavit. Lamarre's trial counsel contended that falsehoods and material misrepresentations of the facts were made concerning the initial email that brought Lamarre to the attention of law enforcement. Specifically, the affidavit omitted the information that the FBI's investigation of the initial emails was conducted two years before the affidavit was executed, that the FBI scan of the computer during the initial investigation found no child pornography, and that the FBI had in fact closed its case. Deputy Tobleman also failed

to state in the affidavit that the computer in question was already in police custody, having been seized without a warrant "for safe keeping" thirteen days before the affidavit was completed and the warrant was issued. Therefore, according to Lamarre, the warrant was based on false statements or statements made in reckless disregard of facts known to Deputy Tobleman, the affiant.

The trial court, however, after listening to the evidence and the arguments of counsel, determined that the omissions and statements complained of by Lamarre—the closed investigation, the prior seizure of the computer—did not amount to deliberate misrepresentations or statements made in reckless disregard for the truth. Moreover, the trial court determined that even if the information concerning the initial investigation was removed, additional information in the affidavit, specifically the information obtained from Sanders and her son, was sufficient to establish probable cause for the warrant.

Having reviewed the record, we hold the trial court did not abuse its discretion in finding Lamarre failed to establish by a preponderance of the evidence that the deputy's alleged misstatements and omissions were intentional or made with reckless disregard. We further hold that it was not an abuse of discretion for the court to determine the alleged misstatements and omissions amounted to nothing more than negligence on the part of Deputy Tobleman. "Allegations of negligence or innocent mistake are insufficient" to warrant striking portions of an affidavit. *Franks*, 438 U.S. at 173. As recognized by the court of criminal appeals, "a misstatement in an affidavit that is merely the result of simple negligence or inadvertence, as opposed to reckless disregard for the truth," will not render a warrant invalid." *Dancy v. State*, 728 S.W.2d 772, 783 (Tex. Crim. App. 1987).

We also hold the trial court did not err in determining that excluding the portions of the affidavit complained of would not render the affidavit, when read as a whole, insufficient to

establish probable cause. Deputy Tobleman's affidavit stated Lamarre rented a room in Sanders's home, and her minor child told authorities that Lamarre showed him a pornographic video on Lamarre's computer that contained "two guys, they were like swarming—swarming around this girl and they were like man-handing her a little bit. And then they started like rough-housing, and then they started having hard-core sex." Sanders's son went on to confirm the girl in the video was a minor. The son further testified he was shown this video on Lamarre's computer while in the Sanders's residence. Based on these statements, we conclude that after drawing reasonable inferences and considering the totality of the circumstances, a magistrate could have reasonably found the affidavit sufficient to establish probable cause to search the computer. Accordingly, we hold the trial court did not err in finding the affidavit was sufficient to establish probable cause even in the absence of the information complained of by Lamarre. Therefore, we overrule Lamarre's first point of error.

### *Testimony at Punishment Phase*

In his second and third points of error, Lamarre contends the trial court erred in overruling his objections to certain testimony given by two witnesses during the punishment phase of the trial. More specifically, he argues the trial court should not have admitted the testimony of witnesses A.M. or M.C. because their testimony was "inadmissible extraneous [offense] victim impact testimony."

A.M. and M.C. are Lamarre's former step-daughters, who resided with Lamarre when he married their mother. The State called A.M. and M.C. as witnesses during the punishment phase of the trial. Both witnesses testified about sexual and physical abuse they allegedly suffered at the hands of Lamarre during the time they resided with him and the impact the abuse had on them.

After A.M. and A.C. testified without objection that Lamarre has sexually and physically abused them, the State asked each woman how the abuse affected her life. A.M. stated, "It's pretty much ruined my life." At that point, Lamarre objected, arguing the testimony was inadmissible because it was "victim impact and that's inappropriate prior to sentencing." The objection was overruled. A.M. then stated she suffered from severe depression and panic attacks, and was unable to maintain a stable relationship with a man.

When A.C. testified, the State asked her the same question about the effect of Lamarre's abuse. Lamarre raised the same objection, which was overruled. A.C. then testified she has had extensive counseling, suffers from severe anxiety and depression, and makes "bad choices as far as men."

### *Standard of Review*

This court reviews a trial court's evidentiary rulings under an abuse of discretion standard. *Hines v. State*, 383 S.W.3d 615, 624 (Tex. App.—San Antonio 2012, pet. ref'd) (citing *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012); *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010)). A trial court abuses its discretion only when its decision is outside the zone of reasonable disagreement. *Hines*, 383 S.W.3d at 625 (citing *Tienda*, 358 S.W.3d at 638).

### *Application*

During the punishment phase of a trial, "evidence may be offered . . . as to any matter the court deems relevant." TEX. CODE CRIM. PROC. art. 37.07 § 3(a)(1) (West Supp. 2012). Such evidence may include extraneous offenses, even those that are unadjudicated. *Id.* Such evidence is relevant, and therefore admissible, if it will assist the trier of fact in assessing an appropriate sentence. *Rogers v. State*, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999). Thus, the testimony of A.M. and A.C. regarding Lamarre's abuse was admissible during the punishment phase as

extraneous offense evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07 § 3(a)(1). This is uncontested by Lamarre.

"'Victim impact' evidence is evidence of the effect of an offense on people *other* than the victim." *Roberts v. State*, 220 S.W.3d 521, 531 (Tex. Crim. App. 2007) (emphasis in original). In *Roberts*, the court held that testimony during the punishment phase of the trial by a victim of an extraneous robbery about the impact the robbery had on her was admissible. *Id.* The court held her testimony was not inadmissible victim impact testimony because she was *the victim* of the extraneous robbery. *Id.* (emphasis added).

The *Roberts* holding is directly on point. Here, A.M. and A.C. were victims of prior extraneous offenses committed by Lamarre. During the punishment phase, these victims testified about the impact the offenses had on their lives. Their testimony is not victim impact evidence because they were the victims of the sexual and physical abuse. *See id.*

Lamarre relies on two cases from the court of criminal appeals, *Haley* and *Cantu*. *See Haley v. State*, 173 S.W.3d 510 (Tex. Crim. App. 2005); *Cantu v. State*, 939 S.W.2d 627 (Tex. Crim. App. 1997). These cases are distinguishable. In the cases relied upon by Lamarre, the court of criminal appeals held testimony from the mother of the murdered victim, who was not a victim named in the indictment, was inadmissible. *Haley*, 173 S.W.3d at 518; *Cantu*, 939 S.W.2d at 637. The court of criminal appeals reasoned such victim impact testimony was irrelevant, and therefore inadmissible. *Id.* In contrast, the evidence in *Roberts*, as here, concerned extraneous offense evidence from the actual victim, and therefore the evidence was not, by definition, victim impact evidence:

> The evidence presented here was evidence of the effect of a different offense on *the victim* (of the extraneous offense), and thus is distinguishable from the situation presented in *Cantu*. The evidence was admissible.

*Roberts*, 220 S.W.3d at 531 (emphasis in the original). In sum, where the person testifying is *also a victim of the defendant*, the evidence presented is not victim impact evidence, and therefore not inadmissible under *Cantu* and *Haley*. *See id.*

Because the testimony from A.M. and A.C. was not victim impact testimony—it was not evidence of the effect of an offense on someone *other* than A.M. and A.C.—we hold the trial court did not abuse its discretion in overruling Lamarre's objections to the admission of the testimony. Accordingly, we overrule points of error two and three.

### State's Cross-Point

In a single cross-point, the State contends we must reform the judgment to reflect that Lamarre's sentences are to run consecutively. We agree.

The written judgments in each of appellant's convictions state that "THIS SENTENCE SHALL RUN CONCURRENTLY UNLESS OTHERWISE SPECIFIED." However, when the trial judge pronounced sentence in open court, it specifically stated, "I will assess the 10 years on each count and stack them," indicating the sentences were to run consecutively.

The Texas Code of Criminal Procedure requires that in a felony case, the sentence must be pronounced in the presence of the defendant. *State v. Davis*, 349 S.W.3d 535, 538 (Tex. Crim. App. 2011) (citing TEX. CODE CRIM. PROC. ANN. art. 42.03 § 1(a) (West Supp. 2012)). "When the oral pronouncement of the sentence and the written judgment vary, the oral pronouncement controls" because "the written sentence or order simply memorializes" the oral pronouncement. *Davis*, 349 S.W.3d at 538–39 (quoting *Ex parte Madding*, 70 S.W.3d 131, 135 (Tex. Crim. App. 2002)). The rationale for this rule is that "the imposition of sentence is the crucial moment when all of the parties are physically present at the sentencing hearing and able to hear and respond to the imposition of sentence." Once he leaves the courtroom, the defendant begins serving the sentence imposed. *Madding*, 70 S.W.3d at 135.

Here, it is undisputed that when it orally pronounced the sentence, the court ordered Lamarre's sentences to run consecutively, and it is this pronouncement that controls. *See Davis*, 349 S.W.3d at 538–38. Accordingly, we sustain the State's cross-point and reform each of the trial court's judgments to indicate that the sentences are to run consecutively.

## CONCLUSION

Based on the foregoing, we overrule Lamarre's points of error and sustain the State's cross-point. We reform the trial court's judgments to indicate that Lamarre's sentences are to run consecutively. As modified, we affirm the trial court's judgments.

Marialyn Barnard, Justice

Do Not Publish