

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-17-00040-CR

SEAN A. VALDEZ                                                    APPELLANT

V.

THE STATE OF TEXAS                                               STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY
TRIAL COURT NO. 1428428D

----------

## MEMORANDUM OPINION[1]

----------

Pursuant to a plea bargain, Appellant Sean A. Valdez pled nolo contendere to one count of possession of 4 or more but less than 200 grams of methamphetamine, and the trial court placed him on 2 years' deferred adjudication and ordered that he pay a $300 fine. *See* Tex. Health & Safety Code Ann. § 481.102(6) (West Supp. 2017), § 481.115(d) (West 2017). In one

---

[1]*See* Tex. R. App. P. 47.4.

point, Appellant challenges the trial court's denial of his motion to suppress. We affirm the trial court's judgment.

## I. BACKGROUND FACTS

On the morning of April 29, 2015, Appellant's wife, Michelle Skyy, called Arlington police to report that he had pointed an AR-15 (the gun) at her,[2] and the police responded to the couple's residence. After the police arrived, Appellant came out of the house unarmed. The police arrested him, handcuffed him, and placed him in a squad car.[3]

Officers then entered the house "to insure there were no other persons inside." In that process, officers saw a "very tall wardrobe closet, like a portable wardrobe closet" in the master bedroom. It was big enough to conceal someone. Officer Jesse Manning looked inside the wardrobe and saw "fairly substantial" marihuana plants. The officers finished the approximately two-minute sweep and left the house.

Because the gun was neither found on Appellant nor seen in the sweep, Detective Jack Jenkins drafted an affidavit in support of a warrant for the gun (gun warrant). Meanwhile, Appellant had told another officer that the gun was

---

[2]Skyy also appealed the trial court's denial of her motion to suppress. *See Skyy v. State*, No. 02-17-00038-CR (Tex. App.—Fort Worth June 7, 2018, no pet. h.) (mem. op., not designated for publication).

[3]A grand jury later no-billed Appellant for aggravated assault with a deadly weapon.

inside a cushioned bench at the foot of the bed in the master bedroom, so Detective Jenkins included that information in the affidavit. However, he did not include the information that he had heard about the marihuana found growing inside the portable closet.

The magistrate judge who signed the affidavit and gun warrant wrote 1:20 p.m. as the time at which he signed the gun warrant but 2:17 p.m. as the time at which he signed the affidavit. Detective Jenkins testified at the hearing on the motion to suppress that he presented the affidavit and gun warrant to the magistrate judge at the same time and that the magistrate judge signed them at the same time. Officers searched the couple's residence pursuant to the gun warrant and found the gun in the master bedroom.

Detective William Bill, a narcotics detective, participated in the search of the residence authorized by the gun warrant. He too had already learned about the marihuana growing in the master bedroom. While in the residence, Detective Bill saw the "large grow tent containing five pla[]nts" in plain view, seized the five plants, which he recognized were marihuana plants, and left the home after the gun was found.

Detective Bill then drafted a search warrant affidavit to obtain a warrant (drug warrant) to search the residence for "[a] quantity of mari[h]uana, materials, containers, or devices used in the packaging, cutting, weighing, [and] distribution of narcotics." In the affidavit, Detective Bill stated that he had seen the marihuana plants while executing the gun warrant but did not mention that other

3

officers had previously seen the marihuana in the warrantless sweep and had informed him of its presence before his participation in the search for the gun. Detective Bill secured the drug warrant and returned to the residence to search it again. During the search pursuant to the drug warrant, Detective Bill found and seized various items of contraband, including baggies of methamphetamine from a safe bolted to the concrete inside the garage.

## II. MOTION TO SUPPRESS

Appellant filed a motion to suppress "any evidence obtained pursuant to the warrant[s]" on the grounds that "the protective sweep, the issuance of the warrants, the affidavits upon which said issuance was based, the execution of said warrants, and the return to the issuing judge by the officers executing said warrants and the seizure itself were illegal" and violated Appellant's rights under the Fourth and Fourteenth Amendments of the U.S. Constitution, article I, section 9 of the Texas Constitution, and Texas Code of Criminal Procedure article 38.23. Appellant specifically argued that the officers lacked justification for the sweep; that the arrest, searches, and seizures were unreasonable as they were not conducted pursuant to a valid warrant; and that the search warrants were illegally issued in that the issuing magistrate's and judge's "probable cause determination reflected an improper analysis of the totality of the circumstances test when, as a matter of law, the probable cause determination was not objectively reasonable." The trial court denied the motion after a hearing.

## III.     FINDINGS OF FACT

The trial court issued findings of fact pursuant to Appellant's request:

*Officer Jesse Christopher Manning*

1.  On April 29th, 2015, at approximately 9:00 a.m., Arlington police officers were dispatched to a domestic assault at 4412 Blackberry Drive, [Appellant's] residence (RR 1: 9).

2.   Officer Jesse Manning understood the "subject was potentially barricaded inside the house" at the time of the initial dispatch[] (RR 1: 9).

3.  An offense report . . . indicates that the initial dispatch concerned "a complainant being assaulted by her husband who had a gun" (Defendants' Ex. 3, page 1).

4.   When officers arrived at 4412 Blackberry Drive, Co-Defendant Skyy (the complainant in the assault case) was outside the house (Defendant's Ex. 2, page 2; Defendant's Ex. 3, page 1).

5.   As the officers were taking up positions around 4412 Blackberry Drive, [Appellant] exited the house (RR 1: 10, Defendant's Ex. 3, page 1).

6.  [Appellant] complied immediately with officer commands to lie on the ground and was handcuffed with his hands behind his back (RR 1: 10–11; Defendant's Ex. 3, page 1).

7.   As Officer Manning was "securing the front door," he observed other officers escorting [Appellant] towards the squad cars (RR 1: 12).

8.  Soon after that, three Arlington officers (Officer Manning, Officer Grimmett, and Sgt. Stellato) entered [Appellant's] residence to conduct a protective sweep, and to specifically clear and secure the residence.  (RR 1: 13, 16; Defendant's Ex. 3, page 1).

9.  The officers' rationale for conducting this protective sweep was to "ensure there were no other persons inside, be it an injured person or an additional suspect" (RR 1: 16; Defendant's Ex. 3, page 1).

10.   The officers had no "specific" information that there were any additional people in the house (RR 1: 24).

5

11. According to [O]fficer Manning, in situations like this one (where a suspect is arrested outside his home and alleged to have been previously armed), "[W]e always clear the structure every time, looking for additional suspects or victims of a crime" (RR I: 24).

12. In the process of "clearing" [Appellant's] home, the officers entered every room of the house (RR 1: 16).

13. In the master bedroom, the officers located a portable wardrobe approximately six feet tall being used as a mari[h]uana grow closet (RR I: 16–17; State's Exs. 6 & 7; Defendant's Ex. 3, page 1).

14. Inside this grow closet, officers found several good-sized mari[h]uana plants (RR 1: 17; Defendant's Ex. 3, page 1).

15. After observing the mari[h]uana plants, the officers exited [Appellant's] residence and it was decided that other officers would procure a search warrant to locate the following items: 1) the weapon involved in the call; and, 2) mari[h]uana and possibly other drugs or paraphernalia ( RR. 1: 17–18; Defendant's Ex. 3, page 1).

16. Immediately after exiting [Appellant's] house, Officer Grimmett, Officer Manning, and Sgt. Stellato conveyed the information about the Mari[h]uana grow room to other officers, including the detectives who had become involved in [Appellant's] case (RR I: 25). This occurred "by 10:00 a.m., 10:30" at the latest (RR: 19).

17. Officer Manning is credible.

*Detective Jack Jenkins*

18. Det. Jack Jenkins testified that he arrived at the scene and spoke with Codefendant Skyy regarding the domestic assault allegation (RR 1: 50).

19. By the time Det. Jenkins arrived, [Appellant] was already in custody (RR: 50).

20. Det. Jenkins drafted a search warrant affidavit requesting a search warrant to search [Appellant's] house for the [gun] that [he] allegedly used in the domestic assault (RR I: 51; Defendant's Ex. 1, page 2).

6

21. Det. Jenkins testified that he had been "out to the scene" and [had] spoken to the responding officers prior to drafting his affidavit (RR 1: 54).

22. Jenkins further testified that, by "early in the morning," he knew that the responding officers had conducted a protective sweep of [Appellant's] house and discovered a mari[h]uana grow operation inside the master bedroom. (RR 1: 54).

23. Although Det. Jenkins was aware of this information prior to drafting his affidavit in support of the search warrant, he did not include this information in the affidavit, as it was drafted solely for the purpose of searching for the [gun]. (RR 1: 50–51, 59; Defendant's Ex. 1 , page 1–2).

24. The search warrant reflects that it was signed at 1:20 p.m. on April 29th, 2015 by [an Arlington municipal judge]. (Defendant's Ex. 1, page 6).

25. For reasons Det. Jenkins could not explain, his affidavit in support of this search warrant reflects that it was "subscribed and sworn to" after the search warrant was signed, at 2:17 p.m. on April 29, 2015 (Defendant's Ex. 1, page 3; RR 1:51-52).

26. Jenkins testified that "They would . . . have been presented to the judge at the same time. And I'm not sure why he would have wrote (sic) two different times on there. I didn't catch that at the time." (RR 1: 52).

27. Det. Jenkins was present at the time the judge signed the warrant. (RR 1: 53).

28. Det. Jenkins is credible.

*Detective William Bill*

29. Det. William Bill testified that he is employed as a narcotics detective with the City of Arlington (RR: 27).

30. On the morning of April 29, 2015, Det. Bill was called to assist with the collection of the mari[h]uana that had been discovered by the officers during the protective sweep of [Appellant's] house (RR I: 35–36; Defendant's Ex. 4, page 3).

31. Det. Bill testified that he knew of the mari[h]uana in [Appellant's] house in the "early morning" of April 29th, 2015 (RR I: 37–38).

32. Bill further testified that, after he received this information, he believed that probable cause existed to obtain a search warrant for "narcotics or mari[h]uana[.]" (RR I: 42)

33. Det. Bill arrived at [Appellant's] house at 2:00 or 3:00 p.m. (RR 1: 33, 35).

34. At approximately 2:22 p.m., Det. Bill assisted in executing the "gun" search warrant (RR I: 38; Defendant's Ex. 2, page 2).

35. During this search, Det. Bill observed the mari[h]uana grow and the mari[h]uana plants that the responding officers had initially observed during the "protective sweep" of [Appellant's] house (RR I: 38; Defendant's Ex. 2, page 2).

36. Five mari[h]uana plants were seized during this search (Defendant's Ex.2, page 2).

37. The [gun] that was the subject of the first search warrant was also seized during this search (Defendant's Ex.2, page 2).

38. Det. Bill also spoke with Co-Defendant Skyy . . . (who told Detective Bill that there was a small amount of mari[h]uana in her vehicle and described the bag that contained the mari[h]uana) and subsequently searched her vehicle (RR 1 :30–34; Defendant's Ex. 4, page 3).

39. Det. Bill left the scene and drafted a search warrant affidavit . . . to obtain a search warrant to search [Appellant's] house for "a quantity of mari[h]uana, materials, containers, or devices used in the packaging, cutting, weighing, distribution of narcotics." (Defendant's Ex. 2, page 1).

40. In this affidavit, Det. Bill indicated that, during the execution of the gun search warrant, he observed a "grow tent" containing five mari[h]uana plants in [the] master bedroom (Defendant's Ex. 2, 2).

41. [A Tarrant County district judge] signed the search warrant on April 29, 2015 at 7:27 p.m. (Defendant's Ex. 2, page 4).

42. During the execution of this second search warrant, at approximately 8:00 p.m., officers located and seized a "large quantity of green leafy substance," "a large quantity of US Currency," and "several baggies of crystal[-]like substance" that field tested positive for methamphetamine (Defendant's Ex. 4, page 3–4).

8

43. Det. Bill is credible.

## IV. CONCLUSIONS OF LAW

The trial court also issued conclusions of law. Regarding the protective sweep, the trial court concluded:

- "The police had an objectively reasonable belief that a person might remain in the area who could pose a danger based notably upon the fact that" Appellant was not found in possession of the gun;

- "The officers could not be certain of who might still remain in the residence and the exact location of the [gun]";

- "[T]he police search of the premises that immediately followed [Appellant's] being taken into custody was a proper protective sweep"; and

- "The protective sweep was reasonable, well-founded under the circumstances and legally permissible."

Regarding the gun warrant, the trial court concluded:

- The "affidavit contained sufficient facts to support" the gun warrant;

- The facts in the findings of fact support the conclusion that "the information relied on by Detective Jenkins as the Affiant of the [gun] warrant and affidavit was sufficient to support probable cause to obtain a search warrant for the residence";

- "[P]robable cause did not come from information obtained from an illegal search and was not tainted";

- "Information regarding the observation of the drug evidence during the protective sweep was properly omitted from the search warrant affidavit because it was not material to the search for the [gun]";

- "Probable cause existed for the [gun] search regardless of observations made during the protective sweep concerning drug evidence";

- "Detective Jenkins credibly testified that the difference in time between his signature and that of the magistrate was a technical

9

discrepancy, as he recalled the magistrate signed the warrant in his presence"; and

- "[T]he evidence seized as a result of the [gun] warrant is admissible as matter of law."

Finally, regarding the drug warrant, the trial court concluded:

- The "affidavit contained sufficient facts to support" the drug warrant;

- The facts in the findings of fact support the conclusion that "the information relied on by Detective Jenkins as the Affiant of the [drug] warrant and affidavit was sufficient to support probable cause to obtain a search warrant for the residence";

- "[P]robable cause did not come from information obtained from an illegal search and was not tainted";

- "The protective sweep was proper[, so] any information regarding the observation of the drug evidence during the sweep did not taint the subsequent search and seizure of such evidence";

- Officers saw the marihuana in plain view while executing the gun warrant; "this alone . . . provided probable cause for the [drug] warrant";

- "Probable cause existed for the search for mari[h]uana evidence as stated in the affidavit"; and

- "[T]he evidence seized [pursuant to] the [drug] warrant is admissible as a matter of law."

## V.    DISCUSSION

### A.    Appellant Challenges the Denial of His Motion to Suppress on Multiple Grounds.

In his sole point, Appellant contends that the trial court reversibly erred by

denying his motion to suppress because:

- The initial search was an unlawful protective sweep;

- The information obtained during the unlawful protective sweep was used to support the drug warrant; and

10

- Absent that information, the drug warrant lacked probable cause.

Appellant specifies in his brief that "[t]he evidence that should have been suppressed was, at a minimum, the 'large quantity of green leafy substance,' 'a large quantity of US Currency,' and 'several baggies of crystal[-]like substance' that field tested positive for methamphetamine," all seized during the execution of the drug warrant.

**B.      We Apply a Deferential Standard of Review to a Magistrate's Decision to Issue a Search Warrant.**

As the Texas Court of Criminal Appeals recently reiterated, "The core of the Fourth Amendment's warrant clause and its Texas equivalent is that a magistrate may not issue a search warrant without first finding probable cause that a particular item will be found in a particular location." *State v. Elrod*, 538 S.W.3d 551, 556 (Tex. Crim. App. 2017) (citations and internal quotation marks omitted). "Probable cause exists when the facts and circumstances shown in the affidavit would warrant a man of reasonable caution in the belief that the items to be seized were in the stated place." *Id.* (citation and internal quotation marks omitted).

Although we usually bifurcate our review of a trial court's denial of a motion to suppress—according almost total deference to the historical facts found by the trial court but reviewing de novo its application of the law to the facts, *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007), when we review a magistrate's probable cause determination, we apply the deferential standard of

11

review set out by the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317 (1983). *Swearingen v. State*, 143 S.W.3d 808, 811 (Tex. Crim. App. 2004). Under that standard, we uphold the magistrate's probable cause determination "so long as the magistrate had a substantial basis for . . . conclud[ing] that a search would uncover evidence of wrongdoing." *Gates*, 462 U.S. at 236, 103 S. Ct. at 2331 (internal citations omitted); *see also State v. McLain*, 337 S.W.3d 268, 271–72 (Tex. Crim. App. 2011); *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010).

In performing our review, we interpret the affidavit supporting the warrant "in a commonsensical and realistic manner, recognizing that the magistrate may draw reasonable inferences. When in doubt, we defer to all reasonable inferences that the magistrate could have made." *McClain*, 337 S.W.3d at 271 (citation and internal quotation marks omitted). "The focus is not on what other facts could or should have been included in the affidavit; the focus is on the combined logical force of facts that are in the affidavit." *State v. Duarte*, 389 S.W.3d 349, 354–55 (Tex. Crim. App. 2012).

"[T]he Fourth Amendment strongly prefers searches to be conducted pursuant to search warrants." *McLain*, 337 S.W.3d at 271. Therefore, "purely *technical* discrepancies in dates or times do not automatically vitiate the validity of search . . . warrants." *Green v. State*, 799 S.W.2d 756, 759 (Tex. Crim. App. 1990). Thus, we review technical defects under the totality-of-the-circumstances test enunciated in *Gates*. 462 U.S. at 236, 103 S. Ct. at 2331; *Green*,

12

799 S.W.2d at 757–58. Due to the nature of these technical defects, parol evidence, in the form of explanatory testimony, may be used to cure them. *Green*, 799 S.W.2d at 760.

**C.** **Regardless of the Legality of the Protective Sweep, the Gun Warrant and Drug Warrant Were Valid, and the Searches and Seizures of Evidence Pursuant to the Warrants Were Legal.**

We do not need to resolve the legality of the warrantless sweep of the house because, as we show below, the gun warrant and drug warrant were both valid and based on probable cause, and neither depended on information gleaned from the sweep. *See* Tex. R. App. P. 47.1; *Skyy*, No. 02-17-00038-CR, slip op. at 7–11 (concluding same in dicta).

**1.** **The Independent Source Doctrine Is an Exception to the Exclusionary Rule.**

Under the independent source doctrine—an exception to the exclusionary rule—evidence derived from or obtained from a lawful source, separate and apart from any illegal conduct by law enforcement, is not subject to exclusion. *See Wehrenberg v. State* (*Wehrenberg I*), 416 S.W.3d 458, 469–70 (Tex. Crim. App. 2013).

**2.** **The Gun Warrant Was Based on Probable Cause, Independent of the Sweep, and Valid.**

In his affidavit drafted to secure the gun warrant, Detective Jenkins stated that:

- Skyy had told him that Appellant took the gun from her when she tried to leave the house with it;

13

- Appellant told another officer in a jailhouse interview that the gun "was in a small, cushioned[] bench at the foot of the bed in the master bedroom"; and

- Detective Jenkins had good reason to believe that the gun Appellant used or exhibited when allegedly committing aggravated assault with a deadly weapon of Skyy was in the residence.

The affidavit therefore provided the magistrate with a substantial basis for concluding that the gun would be found in a search of the residence. *See Gates*, 462 U.S. at 236, 103 S. Ct. at 2331; *McLain*, 337 S.W.3d at 271; *Skyy*, slip op. at 11.

Further, nothing in the affidavit or gun warrant referred to information obtained during the sweep. *See Wehrenberg v. State* (*Wehrenberg II*), Nos. 02-11-00560-CR, 02-11-00561-CR, 2014 WL 890320, at *2 (Tex. App.—Fort Worth Mar. 6, 2014, pet. ref'd) (recognizing facts in affidavit were derived from a source independent of the police's initial warrantless entry and upholding denial of suppression motion).

Finally, regarding the apparent time discrepancy indicating that the magistrate issued the gun warrant almost an hour before seeing the affidavit supporting it, Detective Jenkins testified that he could not explain the apparent discrepancy but that he had presented the two documents to the magistrate at the same time and that he was present when the magistrate signed both documents. The trial court found the officer credible. Accordingly, the time discrepancy did nothing to invalidate the gun warrant. *See Green*, 799 S.W.2d at 759–60; *State v. Welborn*, No. 02-14-00464-CR, 2015 WL 4599379, at *2 (Tex.

14

App.—Fort Worth July 30, 2015, pet. ref'd) (mem. op., not designated for publication), *cert. denied*, 136 S. Ct. 1672 (2016).

We therefore uphold the gun warrant.

### 3. The Gun and Marihuana Plants Seized Pursuant to the Gun Warrant Were Admissible.

Detective Bill helped execute the gun warrant. During the search, he saw the marihuana growing and seized five marihuana plants. Appellant does not contest the trial court's conclusion that the plants were in plain view. The officers also found and seized the gun. Contrary to Appellant's assertion, these discoveries pursuant to a valid warrant and the plain view exception, see *State v. Dobbs*, 323 S.W.3d 184, 187 (Tex. Crim. App. 2010), were independent of the initial warrantless search, and the evidence was admissible. *See Wehrenberg II*, 2014 WL 890320, at *2.

### 4. The Drug Warrant Was Based on Probable Cause, Independent of the Initial Sweep, and Valid.

In his affidavit drafted to secure the drug warrant, Detective Bill stated that:

- During the execution of the gun search warrant, he had seen in the master bedroom "a large grow tent" containing five marihuana "plants in various stages of cultivation" and had seized them;

- He knew that the plants were marihuana plants because of his "training and experience as a police officer and . . . narcotics detective";

- Based on his training and experience, he also knew that "the components of a marihuana growing operation include but are not limited to structural supports, high intensity lights, ballasts, tubs, water pumps, tubing/hoses, electrical timers, carbon dioxide

15

generators, fans, air filtration systems, grow media, measuring cups, and hydroponic nutrient formula/fertilizer";

- "[I]t is typical for [marihuana] growers to have mari[h]uana packaged for delivery, as well as scales and currency from the sale of the mari[h]uana"; and

- He had good reason to believe that "more contraband" and "a quantity of mari[h]uana, materials, containers, or devices used in the packaging, cutting, weighing, [and] distribution of narcotics" could be found in the residence.

Detective Bill's affidavit provided the district judge sitting as a magistrate with a substantial basis for concluding that more contraband would be found in a search of the residence. *See Gates*, 462 U.S. at 236, 103 S. Ct. at 2331; *McLain*, 337 S.W.3d at 271; *Skyy*, slip op. at 11. Further, nothing in the affidavit or drug warrant referred to information obtained during the warrantless sweep. *See Wehrenberg II*, 2014 WL 890320, at *2. We therefore uphold the drug warrant.

### 5. The Evidence Seized Pursuant to the Drug Warrant Was Admissible.

During the execution of the drug warrant, the police discovered:

- Two pistols in the master bedroom;

- A large digital scale in the garage; and

- A large, locked Winchester safe bolted to the concrete in the garage.

After the Arlington Fire Department opened the safe at the residence, the police found the following items inside:

- "[S]everal baggies of [a] crystal[-]like substance which . . . field-test[ed] . . . positive [for] methamphetamine[]";

16

- "[S]everal large jars of [a] green leafy substance" which appeared to be marihuana;

- "[A] large amount of US currency";[4]

- Small black scales;

- A black assault weapon with ammunition;

- A journal bearing the title, *Marijuana Plant Journal*; and

- Appellant's and Skyy's birth certificates.

Contrary to Appellant's assertion, the police discovered all the evidence pursuant to a valid warrant, independent of the initial warrantless sweep, and the evidence, including the evidence Appellant argues should be suppressed, was admissible. *See Wehrenberg II*, 2014 WL 890320, at *2.

**D.      The Trial Court Properly Denied Appellant's Motion to Suppress.**

To summarize, we have upheld the gun and drug warrants because the affidavits provided a substantial basis for the conclusion that the items sought could be found in the residence and because neither the affidavits nor the warrants relied on the initial, warrantless sweep of the residence. Because the gun warrant was proper, the gun was legally seized, and the marihuana plants were legally seen and seized during the gun warrant's execution under the plain view doctrine. The marihuana plants found in the residence justified the drug warrant, under which the evidence Appellant specifically complains of—the

---

[4]It is unclear from the record whether a "large quantity of green leafy substance" and a "large quantity of US currency" were found in a location in the residence in addition to the safe.

17

methamphetamine, the marihuana, and the money, was legally seized. We therefore uphold the trial court's denial of Appellant's motion to suppress and overrule his sole point.

## VI.   CONCLUSION

Having overruled Appellant's sole point, we affirm the trial court's judgment.

/s/ Mark T. Pittman
MARK T. PITTMAN
JUSTICE

PANEL: SUDDERTH, C.J.; GABRIEL and PITTMAN, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: June 7, 2018