**Opinion filed March 31, 2021**



## In The

# Eleventh Court of Appeals

_____

## No. 11-19-00082-CR

_____

## THE STATE OF TEXAS, Appellant

## V.

## ILSA GANELLE WATSON, Appellee

**On Appeal from the 385th District Court**
**Midland County, Texas**
**Trial Court Cause No. CR52573**

### O P I N I O N

Appellee, Ilsa Ganelle Watson, was charged with the offense of possession of a controlled substance. Appellee filed a motion to suppress the evidence obtained as a result of a warrantless search of a residence. After conducting a hearing on the motion to suppress, the trial court granted the motion. In a single issue, the State appeals the trial court's ruling on the motion to suppress. We affirm.

*Background Facts*

On September 9, 2018, Officer Hailee Pepper of the Midland Police Department was dispatched to a residence on College Avenue in Midland to assist Jacqueline Jobe to retrieve items of personal property that were located in the room that Jobe had rented in the residence and in the refrigerator in the residence. After making contact with Jobe in front of the residence, Officer Pepper attempted to make contact with the owner of the residence by knocking on the front door. Officer Pepper testified that, after knocking on the door several times, the door "[came] open." Officer Pepper then opened the door fully.

At this point, Officer Pepper deemed the door "unsecured," and under Midland Police Department policy, she and other officers entered the residence to "clear" it. The officers did so by going room to room announcing their presence. Officers discovered Appellee and two other individuals in a back bedroom in the house. Appellee and the others were sitting on a bed in the room. Officer Pepper testified that the officers removed the three individuals from the bedroom and escorted them into the living room to talk while other officers continued clearing the residence.

While Officer Pepper remained in the living room with the three individuals, Officer Gage Smith entered the bedroom from which they were removed. He testified that he did so "to insure that nobody else [was] left inside the room behind the door or wherever." Officer Smith's body camera indicated that he was in the bedroom for approximately twenty seconds on this occasion. He testified that, while he was in the bedroom on this initial occasion, he observed "in plain view, on the bed, syringes, a bag of meth, [and] a meth pipe." Officer Smith then borrowed a flashlight from another officer and returned to the bedroom to conduct a more

thorough search of the items in the bedroom. He then walked toward the living room and made a signal to another officer to place the three individuals in handcuffs. Officer Smith returned to the bedroom a third time approximately one minute later to show another officer the items that were on the bed. Officer Smith returned to the bedroom approximately three minutes later with Officer Pepper. They stayed in the bedroom for approximately four minutes.

Appellee filed a motion to suppress all evidence seized by the police. At the hearing, the State called Officer Pepper and Officer Smith as witnesses. Appellee also testified on the issue of standing. Appellee took the position at the hearing that the police officers did not have a sufficient basis for entering the residence to conduct a "protective sweep." The State responded at the hearing by asserting that the officers were justified in conducting a protective sweep of the residence based on the police department's policy for an unsecured door. The State asserted that the contraband was properly seized because it was in plain view when the officers entered the bedroom to conduct a proper protective sweep. The trial court subsequently entered an order granting Appellee's motion to suppress.

*Analysis*

We note at the outset that the State has limited rights of appeal in criminal cases. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01 (West 2018). The State is entitled to appeal a court order that grants a motion to suppress if jeopardy has not attached and if the elected prosecutor certifies to the trial court that the appeal is not taken for the purpose of delay and that the suppressed evidence is of substantial importance to the case. *Id.* art. 44.01(a)(5). The elected district attorney for Midland County personally signed the notice of appeal certifying the matters required to invoke this court's jurisdiction to review the trial court's interlocutory order granting

3

the motion to suppress.  *See State v. Redus*, 445 S.W.3d 151, 154–55 (Tex. Crim. App. 2014).

In its sole issue on appeal, the State challenges the trial court's ruling on the motion to suppress.  The State presents two primary contentions: (1) that the trial court erred by determining that Appellee had standing to challenge the search of the residence and (2) that the trial erred by determining that the police officers' entry into the home to conduct a protective sweep was not justified.

Appellate courts review a trial court's ruling on a motion to suppress for an abuse of discretion.  *Arguellez v. State*, 409 S.W.3d 657, 662 (Tex. Crim. App. 2013).  We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review.  *Lerma v. State*, 543 S.W.3d 184, 189–90 (Tex. Crim. App. 2018) (citing *Furr v. State*, 499 S.W.3d 872, 877 (Tex. Crim. App. 2016)); *see Guzman v. State*, 955 S.W.2d 85, 88–89 (Tex. Crim. App. 1997).  At a hearing on a motion to suppress, the trial judge is the sole trier of fact and judge of the credibility of witnesses and the weight to be given to their testimony.  *Lerma*, 543 S.W.3d at 190 (citing *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000)).  Therefore, we afford almost complete deference to the trial court in determining historical facts. *Id.* (citing *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000)).  "When a trial judge makes express findings of fact, an appellate court must examine the record in the light most favorable to the ruling and uphold those fact findings so long as they are supported by the record."  *State v. Rodriguez*, 521 S.W.3d 1, 8 (Tex. Crim. App. 2017) (citing *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010)).  "The appellate court then proceeds to a *de novo* determination of the legal significance of the facts as found by the trial court—including the determination of

whether a specific search or seizure was reasonable." *Id.* (citing *Kothe v. State*, 152 S.W.3d 54, 62–63 (Tex. Crim. App. 2004)).

The trial court entered detailed findings of fact and conclusions of law. The trial court determined that Appellee had standing to challenge the search of the residence. Specifically, the trial court found that Appellee's testimony at the suppression hearing was believable, that she testified that everything that she owned was inside the residence, and that she rented a room in the residence. On appeal, the State focuses on Appellee's denials to the officers at the scene that she did not live in the residence and her claim that she was homeless when she was booked into jail.

"Although we defer to the trial court's factual findings and view them in the light most favorable to the prevailing party, we review the legal issue of standing de novo." *State v. Betts*, 397 S.W.3d 198, 204 (Tex. Crim. App. 2013) (quoting *Kothe*, 152 S.W.3d at 59). "[A] defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998). The defendant "bears the burden of demonstrating a legitimate expectation of privacy." *Granados v. State*, 85 S.W.3d 217, 223 (Tex. Crim. App. 2002).

In this case, the question of Appellee's standing to challenge the search boils down to whether she rented and resided in the bedroom where the contraband was found. *See Rodriguez*, 521 S.W.3d at 9 (citing *Maxwell v. State*, 73 S.W.3d 278, 282 n.3 (Tex. Crim. App. 2002)) (noting that a tenant has a privacy interest in the leased space); *see also Chapman v. United States*, 365 U.S. 610, 616–17 (1961).[1]

---

[1]An overnight guest also has a legitimate expectation of privacy in his host's home. *Luna v. State*, 268 S.W.3d 594, 603 (Tex. Crim. App. 2008) (citing *Minnesota v. Olson*, 495 U.S. 91, 98 (1990)). However, the legitimate privacy expectation of an overnight guest does not extend to a casual visitor or guest who is merely present with the consent of the homeowner. *Minnesota v. Carter*, 525 U.S. 83, 90 (1998).

"The physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Rodriguez*, 521 S.W.3d at 9 (citing *Welsh v. Wisconsin*, 466 U.S. 740, 748 (1984)).

As presented at the suppression hearing, there was conflicting evidence between Appellee's sworn testimony and her statements to the officers on the day of her arrest. The trial court resolved this conflict in the evidence in favor of Appellee. At a suppression hearing, the trial judge is the sole trier of fact and judge of the witnesses' credibility and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). Furthermore, we must view the evidence in the light most favorable to the trial court's ruling. *Id.* at 24. Based on Appellee's testimony at the suppression hearing, the record supports the trial court's conclusion that Appellee had a reasonable expectation of privacy to the bedroom and its contents. *See Betts*, 397 S.W.3d at 204. Accordingly, the trial court did not err by concluding that Appellee had standing to contest the search.

The trial court also determined that the police officers did not have a sufficient basis for conducting a protective sweep of the residence. When the defendant establishes that a search occurred without a warrant, the burden shifts to the State to prove that the search was reasonable. *State v. Robinson*, 334 S.W.3d 776, 779 (Tex. Crim. App. 2011). "A search, conducted without a warrant, is *per se* unreasonable, subject to certain 'jealously and carefully drawn' exceptions." *Rodriguez*, 521 S.W.3d at 9 (quoting *Georgia v. Randolph*, 547 U.S. 103, 109 (2006)).

The plain view doctrine is an exception to the warrant requirement. *Id.* at 18 (citing *State v. Dobbs*, 323 S.W.3d 184, 187 (Tex. Crim. App. 2010)). Under the plain view doctrine, a warrantless seizure by an officer of an item may be reasonable if it comes within his plain view during his lawful presence within a private area. *Id.*

For a plain view seizure to be lawful, the officer must have had lawful authority to be in the location from which he viewed the item. *Id.* In this case, the State asserts that the officers had authority to be in Appellee's bedroom when they observed the contraband because they were conducting a valid protective sweep of the residence.

A protective sweep is an exception to the warrant requirement. *Reasor v. State*, 12 S.W.3d 813, 815–16 (Tex. Crim. App. 2000). A protective sweep is a "quick and limited search of premises, incident to an arrest[2] and conducted to protect the safety of police officers or others." *Id.* at 815 (footnote added) (quoting *Maryland v. Buie*, 494 U.S. 325, 327 (1990)). A protective sweep is permitted when the officer possesses a reasonable belief that the area to be swept harbors an individual posing a danger to those on the scene. *Buie*, 494 U.S. at 337; *Reasor*, 12 S.W.3d at 816. Officers may not conduct a protective sweep as a matter of right. *Buie*, 494 U.S. at 336; *Reasor*, 12 S.W.3d at 816 ("[T]he protective sweep is not an automatic right police possess when making an in-home arrest."). To the contrary, a protective sweep is permitted only when "justified by a reasonable, articulable suspicion that the house is harboring a person posing a danger to those on the arrest scene." *Buie*, 494 U.S. at 336; *Reasor*, 12 S.W.3d at 816.

At the suppression hearing, the State relied solely on the Midland Police Department's policy that a protective sweep of the residence was required because the officers found an unsecured door. On appeal, the State offers another basis for

---

[2]*Buie* involved an in-home arrest. 494 U.S. at 327. However, an arrest is not a necessary precondition to a lawful protective sweep. *United States v. Miller*, 430 F.3d 93, 100 (2nd Cir. 2005). "[P]olice who have lawfully entered a residence possess the same right to conduct a protective sweep whether an arrest warrant, a search warrant, or the existence of exigent circumstances prompts their entry." *United States v. Martins*, 413 F.3d 139, 150 (1st Cir. 2005); *see Cooksey v. State*, 350 S.W.3d 177, 185 (Tex. App.—San Antonio 2011, no pet.) ("[A]rrest is not always, or *per se*, an indispensable element of an in-home protective sweep[.]" (quoting *United States v. Gould*, 364 F.3d 578, 584 (5th Cir. 2004) (en banc))).

the officers' entry into the residence. It contends that Jobe "implicitly consented to the officers' entry." The State presented this contention in a motion for reconsideration filed after the trial court granted the motion to suppress. The trial court denied by written order the motion for reconsideration. The State now contends that, because the officers entered the residence with Jobe's implicit consent, they were permitted to a conduct a protective sweep of the entire residence under *Valtierra*.

Consent is an established exception to the warrant requirement. *Rodriguez*, 521 S.W.3d at 10 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973)). In *Valtierra*, the Texas Court of Criminal Appeals addressed a situation where a resident of an apartment consented to an officer's entry for the purpose of attempting to locate a girl that was a reported runaway. 310 S.W.3d at 444–45. The resident told the officer that the girl was taking a shower, and he consented to the officer walking to the bathroom to make contact with the girl. *Id.* at 445. As the officer walked toward the bathroom, he observed two men in a bedroom throwing or stuffing something under a bed. *Id.* The men were removed from the bedroom, and officers conducted a protective sweep of the bedroom, whereupon they observed drug paraphernalia in plain view. *Id.*

The court in *Valtierra* addressed the scope of the consent that the resident gave the officers to enter the apartment and then walk to the bathroom to talk to the girl. *Id.* at 444. The court held that "[c]onsent to enter a residence does not, without more, provide consent for a police officer to search the entire residence or objects therein." *Id.* at 448. "Once permitted into a residence, a police officer may take action only in accordance with the purpose for which he was invited or allowed into the residence." *Id.* The court concluded that a protective sweep of the bedroom may

8

have been warranted because the scope of consent given by the resident gave the officer permission to be in a location to observe the men in the bedroom. *Id.* at 451–52. The court remanded the question concerning the legitimacy of the protective sweep to the court of appeals for resolution. *Id.* at 452. The San Antonio Court of Appeals later determined that a protective sweep of the bedroom was warranted because the officer had "a reasonable, articulable suspicion that the bedroom might harbor another individual, and perhaps weapons." *Valtierra v. State*, No. 04-08-00236-CR, 2010 WL 4638840, at *5 (Tex. App.—San Antonio Nov. 17, 2010, no pet.) (mem. op., not designated for publication).

Neither the trial court's findings nor the record from the hearing on the motion to suppress supports the State's argument that the officers entered the residence pursuant to Jobe's implicit consent. The recording from Officer Pepper's body camera shows her conversation with Jobe upon contacting Jobe outside the residence. After learning that Jobe was having problems with the landlord in accessing the room that Jobe had rented in the residence, Officer Pepper approached the front door for the purpose of making contact with the owner of the home. Officer Pepper testified that her purpose was to "see if maybe [the landlord would] let [Jobe] in since we're here." Officer Pepper knocked on the door several times, to the point that the door came ajar. She then opened the door fully and made entry with two other officers going from room to room to clear the residence pursuant to the police department's policy for an unsecured door.

There was no evidence that the officers entered the residence for a protective sweep because of a reasonable, articulable suspicion that it harbored a person posing a danger to those on the scene, as required by *Buie* and *Reasor*. *See Buie*, 494 U.S. at 336; *Reasor*, 12 S.W.3d at 816. In *Reasor*, the court invalidated a protective

sweep because the officer did not "articulate his belief[3] that a third person inside the home was attempting to jeopardize either his or the public's safety." 12 S.W.3d at 817 (footnote added). In this case, the officers entered the residence to clear it because the front door became ajar as a result of Officer Pepper knocking on it. The officers did not articulate a belief that someone posing a danger to them was inside of the residence or even a suspicion that a person was inside of the residence. The officers asked Jobe if someone was inside the residence, and she told them that she was not sure who was inside the residence but that the owner was likely around the back of the residence. And no one answered the door despite Officer Pepper knocking on it repeatedly and announcing the officers' presence.

Moreover, even if we assume that the officers entered the home with Jobe's consent, the officers were only permitted to enter it pursuant to the scope of the consent that she granted or that she was legally authorized to grant. *See Valtierra*, 310 S.W.3d at 448–49. Based on Jobe's discussion with the officers, she wanted assistance to retrieve medicine from the refrigerator and syringes from the room that she had rented in the residence. Jobe could not have granted the officers consent to search a bedroom that she did not rent in the residence or to conduct a room-by-room clearing of the residence. Where the consent of a third party is relied upon, the third party must possess common authority over the premises or effects sought to be inspected. *United States v. Matlock*, 415 U.S. 164, 171 (1974); *Becknell v. State*, 720 S.W.2d 526, 528 (Tex. Crim. App. 1986). "Common authority" rests "on mutual use" of property by persons generally having joint access or control for most

---

[3]Legal commentators suggest that *Reasor* requires that "sweeping officers actually believe that dangerous persons are in the premises." George E. Dix & John M. Schmolesky, 40 *Texas Practice: Criminal Practice and Procedure* § 15:16 (3d ed. 2020). We agree.

purposes. *Matlock*, 415 U.S. at 171 n.7. Accordingly, we agree with the trial court that the officers conducted an impermissible protective sweep.

The State offers an alternative basis for upholding the officers' search of Appellee's bedroom and seizure of contraband from the bedroom. The State contends that the landlord later gave consent for the search of Appellee's bedroom. The State asserts that the officers did not seize any of the contraband from Appellee's bedroom until after the landowner gave consent. The State appears to be asserting that the contraband would have been inevitably discovered and seized based upon the landlord's consent.

A landlord generally may not consent to search a leased residence. *Chapman*, 365 U.S. at 616–17; *Rodriguez*, 521 S.W.3d at 9; *Maxwell*, 73 S.W.3d at 282 n.3. The State asserts that the officers may have believed that the landlord had apparent authority to consent to a search because of Appellee's denials at the scene that she did not live there. *See Hubert v. State*, 312 S.W.3d 554, 561 (Tex. Crim. App. 2010). We need not resolve the issue of the landlord giving consent to a subsequent search and seizure, however, because there was a causal connection between the impermissible protective sweep and the consent given by the landlord.

Article 38.23 requires the exclusion of evidence "obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas." Crim. Proc. art. 38.23(a); *Roquemore v. State*, 60 S.W.3d 862, 870 (Tex. Crim. App. 2001). Evidence must be excluded once a causal connection between the illegality and the evidence is established. *See State v. Daugherty*, 931 S.W.2d 268, 270 (Tex. Crim. App. 1996). The Texas statutory exclusionary rule codified in Article 38.23 does not contain an "inevitable discovery" exception. *Id.* at 271–73. Here, officers sought the landlord's consent based upon their previous discovery of

11

the contraband. Accordingly, there was a causal connection between the impermissible protective sweep and the subsequent seizure of the evidence. We overrule the State's sole issue on appeal.

*This Court's Ruling*

We affirm the order of the trial court.


JOHN M. BAILEY

CHIEF JUSTICE


March 31, 2021

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.